THE ADDRESSOGRAPH COMPANY *v.* THE OFFICE APPLIANCE COMPANY.

Opinion delivered February 10, 1913.

1. FACTORS AND BROKERS—RIGHT TO COMMISSIONS.—Where defendant agrees that plaintiff may sell its goods in a certain district and receive a commission on said sales, retaining the right to revoke the agreement at any time, plaintiff can not recover commissions on a sale completed by defendant after it had in good faith revoked the agreement, even though plaintiff began negotiations with the purchaser, before the revocation of the agreement.   (Page 543.)

2. FACTORS AND BROKERS—CONTRACT—RIGHT TO REVOKE.—When a contract provides that a broker may "take and send in" orders, and that the principal may withdraw the authority at any time, the only limitation upon the power of withdrawal is that it must be done in good faith and not done in prospect of an immediate sale so as to operate as a fraud upon the broker.   (Page 543.)

3. SAME—CONTRACT—MEANING OF TERMS.—When defendant authorized plaintiff to make sales on commission to new customers only, and it appeared the plaintiff was permitted to take old machines in exchange for new, a question is made for the jury as to what was meant by "new customers."   (Page 544.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Riddick & Dobyns,* for appellant.

A broker is not entitled to his commission unless, before his agency is cancelled, the purchaser produced by him enters into a valid and binding agreement to buy. 49 Am. St. Rep. 162.   Appellee was not employed for any definite time, hence, even without an express reservation of the right to withdraw the offer, appellant had the right to revoke his authority *at will* before he pro-

duced a customer able, ready and willing to buy. 89 Ark. 415.

In the absence of fraud by the principal in revoking the broker's authority, the broker is not entitled to commission on a sale made by the principal after the offer is withdrawn, even though the sale be made to one with whom the broker has been negotiating, if the party was not ready and willing to buy before the authority was withdrawn. 83 N. Y. 378, 38 Am. Rep. 441; 204 U. S. 228, 51 L. Ed. 454; 78 N. E. (Mass.) 412; 61 N. Y. 415; 100 Ky. 79; 5 Kan. 608; 84 Minn. 521; 2 Ill. App. 388; 75 Cal. 509.

*Chamberlin & Townsend,* for appellee.

The principle that before a broker is entitled to a commission he must have produced a purchaser ready, willing and able to buy, does not apply to the facts in this case, because that rule applies only where the owner has refused to consummate the sale. In this case the sale shows that appellee had performed his duty in this respect, and the appellant ought not to be permitted to refuse to allow appellee to send in the order and then refuse to pay appellee his commission on the ground that he had not sent in the order. 137 S. W. 326; 133 S. W. 101; 88 Pac. 892. See also 18 Mo. App. 639; 21 Miss. 30.

MCCULLOCH, C. J. Appellant is engaged in the City of Chicago in the business of manufacturing and selling a machine called an "Addressograph" and other office supplies, furniture and appliances. Appellee is engaged in the City of Little Rock in the business of selling office appliances and fixtures, and instituted this action in the Circuit Court of Pulaski County to recover the sum of $145.45 alleged to be due as commission on a sale made by it for appellant to the Little Rock Railway & Electric Company of an addressograph, graphotype and supplies, at the price of $727.25.

It is alleged in the complaint that there was a contract whereby appellee was entitled to a commission of twenty per cent on sales made for appellant, and that it

negotiated a sale to the Electric Company, which was duly accepted and consummated by appellant.

Appellant, in its answer, admitted that it had authorized appellee to make sales on commission, but that the authority was withdrawn before any sale was made. It is also alleged that the authority was limited to sales to new customers and that the Electric Company was not a new customer but was an old one to which appellant had made previous sales.

The transactions between the parties were covered entirely by written correspondence, which constituted the contract. The contract as originally entered into is evidenced by a letter dated November 19, 1909, addressed to appellee by appellant, which reads as follows:

"We have your esteemed favor of the 17th and take pleasure in sending under separate cover our latest catalog. If you can take and send in any order to use from firms in Little Rock, we will allow you a commission of fifteen per cent on the original order, payable when we receive remittance from the customer. Commission applies on original order only. We give no commission for subsequent orders for addresses or supplies of any kind. We reserve the right to withdraw this proposition at any time."

Another letter was written by appellant to appellee on April 26, 1910, which reads as follows:

"Replying to your letter of the 23d, would say that we made you a proposition November 19, offering you fifteen per cent commission on original orders to new customers, payable when we receive remittances, commission to apply on original orders only and we reserved the right to withdraw the proposition at any time. We could not consider giving you commission on supplies, or exclusive territory unless you would put in a complete stock of machines and supplies."

Subsequently correspondence passed between the parties which increased the commission to twenty per cent.

Appellee solicited orders and negotiated several

sales. The evidence tends to show that for about a year prior to February, 1911, appellee's manager was soliciting one of the employees of the Electric Company to buy an addressograph, there being repeated interviews and negotiations during that time. The Electric Company had in use an old machine furnished by appellant, and the negotiations were looking to an exchange of the old for a new machine, paying the difference in price. Appellee's manager testified that appellant allowed him to take old machines in exchange for new ones.

On January 14, 1911, appellant addressed the following letter to appellee:

"As we have arranged with one of our regular agents to cover Little Rock, we therefore withdraw the proposition we made you some time ago for selling addressographs. Kindly acknowledge and oblege."

Appellee replied under date of January 16, acknowledging the receipt of the letter, but notifying appellant that it (appellee) had been soliciting several customers, including the Electric Company, and that if a sale resulted commission would be claimed. The evidence shows that negotiations were still pending at that time between appellee and the Electric Company for a sale, and notwithstanding the revocation of authority appellee's manager continued to solicit the Electric Company to purchase, but gave instructions that the order be sent in direct to appellant. The agent of the Electric Company after being notified of the revocation of appellee's authority to make sale, negotiated directly with appellant at its home office in Chicago and a purchase of the addressograph, etc., resulted on February 8, 1911.

The court, over appellant's objection, gave the following instruction, which was all that was given, namely:

"You are instructed if you find from the evidence that the plaintiff was employed by the defendant to procure purchasers for addressograph machines, graphotype and supplies manufactured by the defendant, and that the defendant agreed to pay the plaintiff a commission of twenty per cent of the sale price thereof if the

plaintiff procured a purchaser; and you further find that the plaintiff procured the Little Rock Railway Company as a purchaser of the defendant's machine, graphotype and supplies at the price of $727.85 net, and that the defendant accepted it as a purchaser and sold and delivered the products at such price, then your verdict should be for plaintiff for twenty per cent of the sale price of said products, notwithstanding you further find from the evidence that the defendant cancelled the plaintiff's authority as its agent before the sale to the Little Rock Railway & Electric Company was consummated by the delivery of the machine to it by the defendant.''

The contract evidenced by the letters did not cover any specified period of time, but on the contrary, appellant expressly reserved the right to withdraw the authority at any time. This was reiterated in the letter of April 26, 1910, in which certain changes were made in the original agreement or, at least, in which language was used which might be construed as a modification of the terms of the original agreement with respect to sales to new customers.

The appellant had the right, therefore, to cancel the contract at any time, and the only limitation which the court can read into that power is that appellant was not to exercise the right of withdrawal in such a manner or at such time as to show bad faith and operate as a fraud upon the rights of appellee.

The case of *Sibbald* v. *Bethlehem Iron Company*, 83 N. Y. 378, is a leading case on this subject. In that case the Court said:

'' ''The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if, without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commission. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done

proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors * * * If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser, ready and willing, and consenting to the prescribed terms, is produced; or if the latter declines to complete the contract because of some defect of title in the ownership of the seller, some unremoved incumbrance, some defect which is the fault of the latter, then the broker does not lose his commissions * * * Where no time for the continuance of the contract is fixed by its terms, either party is at liberty to terminate it at will, subject only to the ordinary requirements of good faith. Usually the broker is entitled to a fair and reasonable opportunity to perform his obligation, subject of course to the right of the seller to sell independently. But that having been granted him, the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the payment of the broker's commissions. Thus, if in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the payment of commission about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal. But if the latter acts in good faith; not seeking to escape the payment of commissions, but moved

fairly by a view of his own interest; he has the absolute right before a bargain is made while negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority, and the latter can not thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker's labor."

The above was followed and quoted with approval by the Supreme Court of the United States in *Crowe* v. *Trickey,* 204 U. S. 228. The Court laid down the rule already established in *McGavock* v. *Woodlief,* 20 How. 221, that the "broker must complete the sale, that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on," with the exceptions stated that, where the owner refuses without sufficient reasons, to fulfil the agreement, or "when the agent's authority is revoked in bad faith before the completion of the sale."

The same rule is announced substantially by the California Court in the case of *Blumenthal* v. *Goodall,* 89 Cal. 251.

Mr. Mechem, in his work on Agency (Sec. 620), states the rule thus: "If after a broker, employed to sell property, had in good faith expended money and labor in advertising for and finding a purchaser, and was in the midst of negotiations which were evidently and plainly approaching success, the seller should revoke the authority with the purpose of availing himself of the broker's efforts and avoiding the payment of his commissions, it could not be claimed that the agent had no remedy. In this case it might well be said that there was an implied contract on the part of the principal to allow the agent a reasonable time for performance, that full performance was wrongfully prevented by the principal's own acts, and that the agent had earned his commission."

That rule was recognized by this Court in the case of *Branch* v. *Moove,* 84 Ark. 462.

This Court has undoubtedly gone to the full limit of any of the authorities in allowing the commission of a broker for sales of which he is shown to have been the procuring cause, notwithstandig the sale was made by the owner himself. *Scott* v. *Patterson,* 53 Ark. 49; *Hunton* v. *Marshall,* 76 Ark. 375; *Boqua* v. *Marshall,* 88 Ark. 375; *Stiewel* v. *Lally,* 89 Ark. 195.

Whatever may be the correct rule in cases where the contract does not cover any specified period of time, or contain any express reservation as to the right to withdraw, we think it is clear upon principle that, where the contract expressly provides, as in this case, that the broker may "take and send in" orders, and also expressly provides that the seller shall have the right to withdraw authority at any time, the court should, and must, in order to give effect to the plain language of the contract, hold that the only limitation upon the exercise of the power of withdrawal is that it must be done in good faith and not made in the prospect of an immediate sale so as to operate as a fraud upon the broker. As said by the New York Court in the case referred to, "any other rule would prolong a contract with a broker indefinitely. No man could know when he was freed from its obligations, and a liability would be imposed not contained in the terms of the contract, and essentially perverting its legitimate construction."

The instructions given in the present case ignored this principle entirely and permitted the appellee to recover merely because he had procured the sale by his effort either before or after the revocation of his authority. Appellee's manager testified that he continued his efforts with the Electric Company to make sale after the revocation of the authority, and under this instruction the jury might have found that his effort at that time was really the procuring cause of the sale.

The instruction was also incorrect in that it ignored the contention that the Electric Company was not a new

customer within the meaning of the terms of the contract. There was some evidence that appellant permitted appellee to take old machines in exchange for new, and this made a question for the jury to determine what was meant by the term "new customer."

Appellant could, under the contract, exercise its right of withdrawal, provided it was done in good faith, at any time before appellee produced a customer ready to consummate a purchase. The reasons given by appellant for its withdrawal illustrates the justice of enforcing that part of the contract. Notwithstanding the fact that it had previously given appellee authority to sell in the city of Little Rock, it desired at this time to send its regular agent to this city for the purpose of making sales, and it would be unjust to impose upon it the duty of paying commissions on a sale to every customer with whom appellee had been negotiating and "sowed the seed" of a sale.

Appellee seems to have tried the case upon an incorrect theory as to its rights under the law, and as the case may be more fully developed in the next trial we will not undertake to say now whether the testimony in the present record is sufficient to sustain the verdict under a correct application of the law. The judgment is therefore reversed and the cause remanded for a new trial.