## GREENSPAN *v.* MILLER.

## Opinion delivered January 26, 1914.

1. APPEAL AND ERROR—COURT SITTING AS A JURY—ISSUE ON APPEAL.— Where the circuit court, sitting without a jury, rendered a judgment, where no declaration of law was made or refused, the finding of the trial judge was as conclusive as if it were the verdict of a jury, and the only question on appeal is whether there was any evidence to support the finding of the court. (Page 194.)

2. PRINCIPAL AND AGENT—REVOCATION OF AUTHORITY.—Where no length of time is specified for the continuance of the contract between a principal and agent, the authority of the agent, not being coupled with an interest, is revocable at any time, subject to the limitation, that it be revoked in good faith. (Page 195.)

3. PRINCIPAL AND AGENT—COMMISSIONS DUE AGENT.—Where an agent, authorized to sell certain machines, procures the agreement of a purchaser to take some of the machines, he is entitled as against his principal to compensation for his labors, when the principal refused to carry out the agreement with the purchaser. (Page 195.)

4. PRINCIPAL AND AGENT—COMPENSATION.—Where an agent is prevented from completing the sale of certain goods by the action of his principal, he is entitled to compensation for his labor, but he will be bound by his acceptance of a proposition to accept less than he would have been entitled to under the contract. (Page 196.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; modified.

This action was commenced before a justice of the peace by J. E. Miller against Abner Greenspan to recover commissions claimed to have been earned by the former on the sale of certain Edison business phonographs, for which the defendant was general agent. On appeal to the circuit court, the case was tried before the court sitting as a jury upon substantially the following facts:

The defendant, Abner Greenspan, was general agent for the sale of Edison business phonographs and supplies in certain designated territory, of which Little Rock was a part. The plaintiff, J. F. Miller, was appointed by Greenspan as his agent in the sale of the machines in Little Rock, and his commissions were to be 25 per cent on cash deals and 20 per cent on time deals and on supplies. No particular length of time was designated in the contract for the agency to continue. Miller was appointed in the early part of 1912, and soon afterward went to the office of the Waters-Pierce Oil Company, in the city of Little Rock, and talked to Mr. Hayes, the general manager, about placing machines in its office. Demonstrations of the work done by the machine were made. Hayes stated that they would need six or nine machines, and Miller called on Greenspan to furnish them for demonstration. Greenspan refused because of the expense. Another company sent its representative to the Waters-Pierce Oil Company with six machines, which were installed in the office and used on trial. Miller went on trying to obtain the order without the installation of the machines for which he was agent, and the manager of the Waters-Pierce Oil Company finally told him that requisition would be made upon the general office for the purchase and installation of the Edison business phonographs.

On the 24th day of September, 1912, Greenspan wrote to Miller that his services as agent had been unsatisfactory, and that his agency from that date had been revoked. In the letter he stated that he would be in Little Rock in a few days, and in reference to the sale of

the machines to the Waters-Pierce Oil Company said they would come to some kind of an agreement as to what Miller's commission should be in case the sale of the machines was made. On the 7th day of October, 1912, Greenspan again wrote to Miller that he had written to the Waters-Pierce Oil Company, declining to complete the sale of the machines to them if they would not recognize him and his newly appointed agent in Little Rock as the source through whom the order for the sale of the machines should come. He stated in the letter that he would sooner lose the order of the Waters-Pierce Oil Company, no matter how many machines were involved, than to have the order given to Miller. On the 8th of October, the manager of the Waters-Pierce Oil Company at Little Rock wrote to Greenspan and stated to him that Mr. Miller had spent a great deal of time in trying to sell the machines and that they had no complaint whatever to make against him, and said that he had done all that any one could do to make the sale of the machines. He further stated that he preferred the Edison business phonographs, and suggested that it would be to the advantage of Greenspan to allow the sale to be made through Miller.

The general manager of the Waters-Pierce Oil Company testified that when he wished to purchase supplies he made requisition on the home office at St. Louis, and that his requisitions were always approved. He stated that he had decided to purchase the machines and would have done so had he been permitted to give the order through Miller, with whom he had been negotiating for the purchase of the machines.

Abner Greenspan, the defendant, testified that the plaintiff, Miller, was working under him, and that he was held responsible by the manufacturing company for the acts and conduct of his agents; that the plaintiff's services as agent were unsatisfactory to him, and that Miller kept the territory in which he worked unproductive. That on this account he revoked his agency on the 24th day of September, 1912. That he told him that

he would make arrangements with him about what his commissions would be in case the sale of the machines was made to the Waters-Pierce Oil Company, but notified him that if the deal was closed after the 15th day of October no commissions would be allowed him. That the sale of the machines was not made to the Waters-Pierce Oil Company. That on the 6th day of August, 1912, while the negotiations for the sale of the machines to the Waters-Pierce Oil Company were still in progress, Greenspan wrote to Miller that in case the sale of six or more machines was made to the Oil Company it would be entitled to a discount of 15 per cent and that on that account he could not afford to allow Miller full commissions. He stated that he would allow him a commission which would have amounted, under the sale, to one hundred dollars. If the plaintiff was allowed full commissions under his contract it would have amounted to $225, the amount sued for and for which the circuit court rendered judgment in his favor. Other evidence will be referred to in the opinion.

No declarations of law were asked for or given by the court, but the court made a finding generally for the plaintiff, and rendered judgment in his favor against the defendant for the sum of $225, and the defendant has appealed.

*Charles Jacobson,* for appellant.

1. Under the contract Greenspan had the right to terminate and cancel it at any time subject to the limitation that the cancellation should not be made in bad faith, and operate as a fraud upon any rights accrued to Miller under the contract. 153 S. W. 804.

2. The verdict is excessive under the proof. Really no commissions were *earned* by Miller. But if entitled to anything, $100 was the limit of recovery under the modified contract.

3. The judgment should be reversed and cause dismissed upon the evidence.

*W. T. Tucker,* for appellee.

1. The case stands as though the court had declared the law correctly and its finding is as conclusive as the verdict of a jury. 53 Ark. 75; 54 *Id.* 235; 55 Ark. 331; 46 *Id.* 141; 87 *Id.* 506; 88 *Id.* 375; 84 *Id.* 462.

2. 153 S. W. 804, does not apply, as the court properly declared the law.

3. The evidence shows bad faith in the cancellation of the contract. Miller was entitled to his commissions just as if a sale was consummated. 87 Ark. 506; 48 N. Y. Sup. Ct. 281; 43 Col. 306; 49 Mo. 383; 62 Ill. 216; 84 Ark. 462.

HART, J., (after stating the facts). In the case of *Blass* v. *Lee,* 55 Ark. 329, the court said: ''In trying this issue no declaration of law was made or refused, and the court is, therefore, presumed to have acted upon correct views of the legal principles applicable to the facts. The finding of the trial judge is as conclusive as if it were the verdict of a jury, and there is no such lack of evidence to support it as would justify us in setting it aside.''

The question, then, presented to us by this appeal is whether or not there is any evidence to support the finding of the court in favor of the plaintiff. Counsel for defendant have cited the case of the *Addressograph Company* v. *Office Appliances Company,* 106 Ark. 536, 153 S. W. 804, as being an authority to sustain his position that the court should have found in favor of the defendant; but we can not agree with him in his contention. In that case the contract expressly provided that the principal should have the right to withdraw the authority of its agent at any time, and the court held that under this provision of the contract the principal had the right to revoke the authority of the agent, and that the only limitation upon the exercise of the power of withdrawal was that it must be done in good faith and not made in the prospect of an immediate sale so as to operate as a fraud upon the agent. In that case the court did not have before it the question of whether there was

any testimony to support the verdict of the jury, but had under determination assignments of error based upon the erroneous action of the court in instructing the jury. It is true that in the contract under consideration here there was no length of time specified for its continuance, and under the general principles of law governing the relation between principal and agent the authority of the agent, not being coupled with an interest, was revocable at any time, subject to the limitation that it should be done in good faith under the rule announced in the case of the *Addressograph Company* v. *Office Appliances Company, supra,* and *Branch* v. *Moore,* 84 Ark. 462.

In the case at bar, the sale of the machines was never completed, and it may be conceded that Miller had not entirely carried out his contract for the sale of the machines at the time the defendant revoked his authority. The evidence for the plaintiff showed, however, that he had been very active in trying to sell the machines and that he had devoted much time and attention to procuring the contract of sale; that prior to the revocation of his agency he had gotten the matter in such shape that success was practically certain and immediate; that the manager of the Waters-Pierce Oil Company had decided to make a requisition for the machines in case Miller was recognized as the procuring cause of the sale of the machines. The manager of the Oil Company stated that he believed the Edison machine to be superior to the other machines examined and tested by him, and said that he had decided to purchase them. He further stated that his requisition for supplies was always approved and honored by the home office. The evidence also shows that Greenspan declined to make the sale unless the order should be made through him or his newly appointed agent at Little Rock. Under these circumstances, coupled with the further fact that the court might have found that there was no good reason for revoking the agency of Miller, there was evidence to sustain the finding of the court on the ground that the defendant revoked the

plaintiff's authority in bad faith and for the purpose of depriving him of his commission.

The court, however, found in favor of the plaintiff in the sum of $225, and this, under the undisputed evidence, we think, was error. In August, 1912, while negotiations for the sale of the machines were still in progress, the defendant wrote to the plaintiff that in case the sale of six or more machines was made the purchaser would be entitled to a discount of 15 per cent and that on this account he could not afford to allow plaintiff full commission for making the sale. He stated in the letter that he would allow plaintiff such a sum for commission which, under the undisputed evidence, would amount to $100. The plaintiff received this letter and made no objections to the changing of his commission, and thereafter continued his activities in trying to make a sale of the machines. Therefore, he will be deemed to have accepted the alterations of the contract stated in the letter and was only entitled to recover $100 as his commission in the sale of the machines. Therefore, the judgment will be reversed, and judgment will be entered here in favor of the plaintiff against the defendant for the sum of $100.