## MURRAY *v.* MILLER.

Opinion delivered March 30, 1914.

1. CONTRACTS—SUBSTITUTION—NEW CONTRACT.—A contract giving appellant the right to sell appellee's land until the authority was revoked, is superseded by a new contract giving appellant an exclusive agency for a limited period, since the second contract covered the same subject-matter and operated as a revocation of the former authority. (Page 231.)

2. BROKERS—SALE OF LAND—COMMISSIONS.—Where the authority of an agent or broker to sell land is limited to a specified time, he must produce a purchaser ready, willing and able to purchase within the time specified, in order to be entitled to a commission on the sale, unless the owner does not act in good faith or attempts to hinder the broker in making the sale. (Page 232.)

3. BROKERS—SALE OF LAND—COMMISSION.—Where a broker, with authority to sell land within a limited time, negotiates with a prospective purchaser, he is entitled to a commission where the owner makes the sale to the purchaser direct, within the time, where his efforts brought about the sale. (Page 233.)

4. BROKERS—SALE OF LANDS—COMMISSION.—Where two agents have the right to negotiate the sale of land for the owner, the agent actually bringing about the sale is entitled to the commission, where the owner acted in good faith. (Page 233.)

5. BROKERS—COMMISSIONS—GOOD FAITH OF OWNER.—Good faith and strict neutrality on the part of the owner as between rival agents seeking to make a sale of his land, is the test of the owner's liability. (Page 233.)

6. BROKERS—SALE OF LANDS—COMMISSIONS.—Where two or more brokers have equal authority to sell land, the fact that one of them began negotiations with a purchaser does not give him the

exclusive right to continue the negotiations as against other agents, who were clothed equally with authority to sell. (Page 235.)

7.  BROKERS—CONTEST FOR COMMISSIONS—ADMISSION OF OWNER.—Where two brokers claimed the commission on the sale of certain land, a statement by the owner that one party was entitled to the commission, but that he would put the money in bank and "let them fight it out," is not an admission of liability by the owner to the party addressed, nor does it constitute a contract to pay him the commission. (Page 235.)

8.  BROKERS—ACTION FOR COMMISSIONS—COSTS.—In an action to recover commissions on the sale of lands, where the owner deposits the amount due, and the court awards judgment to one of the contesting brokers, it is error to tax costs against the owner. (Page 236.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed on Miller's cross appeal, affirmed on Murray's appeal.

*McMillan & McMillan* and *T. J. Murphy,* for appellant.

Where there is any evidence, however slight, pertinent to an issue in a case, it is error to take it from the jury and direct a verdict. The court, therefore, erred in directing a verdict for the intervener. 89 Ark. 372; 73 Ark. 561; Const. Ark., art. 7, § 23; 37 Ark. 164; 76 Ark. 603; 76 Ark. 520; 77 Ark. 556; 84 Ark. 57.

Where there are two or more brokers trying to sell the same real estate, the one who is the procuring cause of the sale is entitled to the commission instead of the one who finally consummates the sale. In this case there can be no question but that appellant was the procuring cause of the sale. 71 S. W. 1104; 101 S. W. 1131; 113 S. W. 718; 96 Pac. 874; Gross on Real Estate Brokers, 96-87.

*John H. Crawford,* for appellees.

1.  Even if the contract of February 12, 1912, was in force, it is patent that but for the interpleader's efforts, the sale would never have been completed. It is not sufficient for a broker to show that his efforts were one of a chain of causes culminating in the sale. He must show that his efforts were the procuring or induc-

ing cause.   129 S. W. (Mo.) 419; 60 S. W. (Tex.) 269; 34 S. W. (Tex.) 153.

2.   Where more than one broker is employed to sell the same land, on equal terms, that one only who succeeds in closing the deal is entitled to commissions, in the absence of fraud or unfair dealings between the land owner and the successful broker.   100 Tenn. 603, 46 S. W. 449.

3.   A new contract covering the subject-matter of an earlier contract and inconsistent with it will abrogate it.   116 Ill. 279, 5 N. E. 543; 92 Ark. 259; 9 Cyc. 595; 3 Page on Contracts, § 1339.

McCulloch, C. J.   Appellant, J. R. Murray, instituted this action in the circuit court of Clark County against W. E. Miller, one of the appellees, to recover the sum of $1,665, alleged to be due as commissions on sale of Miller's ranch in Maverick County, Texas, appellant claiming that he was the procuring cause of the sale which was consummated by Miller and that he was entitled to above named sum under his contract.

Appellee, E. R. Rice, intervened in the action, claiming that he had made the sale of the ranch and was entitled to the commission.

Miller admitted that he was indebted either to appellant or Rice for a commission on the sale and offered to pay the money into court, but in his answer denied that appellant was entitled to the commission.

The court ordered judgment to be entered against Miller for the amount of the commission, but empanelled a jury to try the issue between appellant and Rice as to which of them was entitled to it.   After all the testimony was introduced, the court gave a peremptory instruction to the jury in favor of Rice, and the jury returned a verdict accordingly, and judgment was entered in Rice's favor.

The question, therefore, on this appeal is whether the evidence presented a disputed issue of fact which called for submission to the jury.

Miller owned a large ranch in Maverick County, Texas, and put it on the market for sale, listing it with several real estate agents or brokers, among them both appellant and Rice, who were operating in that territory. The precise date when Rice was first authorized to make the sale is not given. The first authority given to appellant was evidenced by a written agreement signed by Miller, dated February 12, 1912, whereby he gave appellant the agency for the sale of the place at a stipulated price and agreed to pay a commission of 5 per cent on the price "if the purchaser or purchasers are furnished by the said J. R. Murray," and concluding with the statement that "this agency agreement is to remain in effect until the said J. R. Murray is notified in writing to the contrary." On February 26, 1912, Miller entered into another written contract with appellant concerning this matter, in which he agreed to give appellant an option or an exclusive agency for the sale of the property during a period of twelve days thereafter, on terms stipulated in the writing, and agreed to pay a 5 per cent commission if he "should furnish him a buyer for the same within the time mentioned." Appellant did not consummate a sale of the property, but on March 8, 1912, wrote to Miller, who resided at Smithton, Arkansas, a letter in which he called attention to the fact that the option had expired that day and asked for an extension of the time until April 1. He explained in the letter that he was having engineers go over the property to figure out an irrigation project and that he would continue the work and thought that he had a good chance of "moving the property." Miller replied to this by letter dated March 12, 1912, stating, in substance, that he did not care to extend the option for the reason that other agents had the property listed for sale, but in view of the improbability of a sale being made that he would extend appellant's agency until April 10, explaining, however, that appellant's right to sell would not be exclusive. Miller was then in correspondence with Rice and informed him by letter of the extension of appellant's authority to

April 10. The lands were finally sold by Miller early in May to Evans, Vaughan, Carson, Smith, Sanford and Bonnett, parties in Texas, who subsequently formed a corporation to hold the property, and the deed of conveyance from Miller was executed to Rice as trustee for them. The sale was made through Rice, who it seems was operating with them in real estate matters. During the life of appellant's twelve-day option he began negotiations with Rice and the other parties for a sale of the property, but nothing resulted from the negotiations, and on March 18, 1912, he notified Miller by telegram that these parties, naming them, were his prospective purchasers, and that if a sale was made to them he would expect a commission. Miller replied by a telegram, stating that the option having expired, Rice had an equal privilege of making the sale. Miller's sale to Evans and others was consummated on May 6, 1912, as evidenced by written contract, and it appears from the other evidence that it was closed verbally a few days before that and earnest money paid.

It is insisted, in the first place, that, notwithstanding the intervening option agreement dated February 26, 1912, and the extension of appellant's authority under Miller's letter of March 12, the former written authority dated February 12, 1912, whereby he was authorized to sell at any time until authority should be revoked, continued in force and that at the time the sale was made he had a continuing authority to negotiate for a sale.

This contention is unsound for the reason that the contract for an option or exclusive agency dated March 12, as well as the subsequent extension of the authority on the terms named, was a substitution of a new contract and superseded the old one. *Ozark & Cherokee Central Ry. Co.* v. *Ferguson,* 92 Ark. 254.

The contract of February 12, 1912, gave Miller the right to revoke the agency upon notice, and the subsequent contracts covering the same subject-matter necessarily operated as a revocation of the former authority. Appellant's right, therefore, must be tested according to

the authority given him in the letter of March 12, 1912, in which Miller agreed to extend appellant's authority, not the exclusive right to sell, but in common with other real estate men with whom the property was listed, until April 10, 1912, and stating that "if you make sale on this basis I will protect you with agent's usual 5 per cent commission." Appellant's authority was limited to the period of time named, and unless he complied with the terms of the contract he was not entitled to a commission. He does not claim that he produced a purchaser "ready, willing and able" to purchase within that time, but he alleges that he was the procuring cause of the sale, in that he first instituted negotiations with the parties who finally purchased and that it was his effort that first initiated the negotiations which resulted in the sale.

Learned counsel for appellant rely upon decisions of this court holding that as between the owner and the agent the latter is entitled to commission where he is the procuring cause of the sale, notwithstanding the sale is made by direct negotiations between the owner and the purchaser.

According to the undisputed evidence in this case, the appellant has not shown himself entitled to a commission, and the court was correct in giving a peremptory instruction. This is so on two distinct grounds. In the first place, appellant's authority was limited to a specified time, and the rule is that under a contract thus limited the agent must produce a purchaser "ready, willing and able" to purchase within the time specified. If he fails to do that, he is not entitled to a commission, even though a sale is subsequently made by the owner to a purchaser who had negotiated with the agent. *Brown* v. *Mason,* 155 Cal. 155, 21 L. R. A. (N. S.) 328. This is, of course, subject to the rule that the owner must act in good faith and not hinder or interfere with the agent in his effort to make a sale during the period of the contract. Good faith on the part of the owner is the test of his liability, under a contract thus limited, unless the

agent produces a purchaser within the time limited in the contract. *The Addressograph Co.* v. *The Office Appliance Co.*, 106 Ark. 536; *Greenspann* v. *Miller,* 111 Ark. 190, 163 S. W. 776.

Of course, if, during the life of appellant's contract, Miller, the owner, had made a sale of the property directly to a prospective purchaser with whom appellant had been negotiating and whose effort had brought about the direct negotiations with the owner which resulted in the sale, then he would be entitled to a commission. But even if the sale had been made under those circumstances by the owner through another agent who had an equal right with appellant to negotiate a sale, and whose effort contributed equally in bringing about the sale, then the agent who finally secured the purchaser, and not appellant, was entitled to the commission, and the owner is not liable to appellant if he acted in good faith and did not interfere with appellant's efforts to consummate the sale.

Good faith and strict neutrality on the part of the owner as between the rival agents seeking to make the sale is the test of the owner's liability. The authorities are practically unanimous on that proposition. Gross on Real Estate Brokers, § § 97, 98; Mechem on Agency, § 969; *Ward* v. *Fletcher,* 124 Mass. 224; *McGuire* v. *Carlson,* 61 Ill. App. 295; *Glenn* v. *Davidson,* 37 Md. 365; *Glasscock* v. *Vanfleet,* 100 Tenn. 603; *Hennings* v. *Parsons,* 108 Va. 1; *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378; *Vreeland* v. *Vetterlein,* 33 N. J. Law, 247; *Edwards* v. *Pike,* 107 S. W. (Texas), 586.

The doctrine stated by Chief Justice Beasley in the New Jersey case cited above is stated so forcibly and demonstrates the justice of the rule so clearly that we can not refrain from quoting liberally therefrom:

"It is certainly true, as a rule of law, that, under ordinary circumstances, where a broker, employed to sell property, brings about an introduction of a buyer, and when a negotiation, resulting in a purchase, ensues on that foundation, the owner and the buyer can not, by any arrangement, disappoint the claim of the agent for

remuneration. * * * But it appears to be equally obvious that another principle must be applied to cases in which several agents are avowedly employed by the owner. Under such circumstances, it would be impracticable to resort to the same rule as when a monopoly to sell is given to one. In the latter case, the implied understanding is, that the seller will not take advantage of the endeavors of the agent, and that no other person is authorized to do so. But in the instance of a number of agents, the agreement of noninterference is not so wide, for it extends to the act of the seller only. Where the property is openly put in the hands of more than one broker, each of such agents is aware that he is subject to the arts and chances of competition. If he finds a person who is likely to buy, and quits him without having effected a sale, he is aware that he runs the risk of such person falling under the influence of his competitor—and in such case, he may lose his labor. This is a part of the inevitable risk of the business he has undertaken. On the other hand, if fortune should be propitious, a bidder for the property on sale, who has been solicited by his rival, may come to him, and by his means effect the bargain. Now, in this competition, the vendor of the property is to remain neutral; he is interested only in the result. But when either of the agents thus employed brings a purchaser to him, and a bargain is struck at the required price, on what ground can he refuse to complete the bargain? Can he say to the successful competitor, this purchaser was first approached by your rival, and you should have refused to treat with him on the subject? There is no legal principle upon which such a position could rest. It is contrary to the usages of every-day commerce. * * * The task would be difficult and the risk great, if vendors were called upon to decide between the claims of contestants. How would it be possible for such vendor to say whose influence it was that produced the sale, where the purchaser has been solicited by both agents. It would be at variance with all practical rules, to require the party selling to pronounce, under the pen-

alty of paying double commissions, upon the metaphys-
ical question, which agent, under such circumstances, was
the efficient cause of the sale. In the absence of all col-
lusion on the part of the vendor, the agent, through whose
instrumentality the sale is carried to completion, is enti-
tled to the commissions.''

There is no evidence in this case that Miller acted
unfairly toward appellant or interfered with him in his
negotiations for a sale. He was advised of the limita-
tion of his rights to make the sale and knew that other
agents were authorized to do so, and, therefore, assumed
the risk of losing his labor on account of the sale being
made by another agent.

Nor is there any evidence that Rice acted unfairly
in taking the purchasers away from him. The fact that
appellant had first begun negotiations with the purchas-
ers did not give him the exclusive right to continue the
negotiations as against other agents who were clothed
equally with authority to sell.

Counsel for appellant also insist that there is testi-
mony to the effect that at the time Miller consummated
the sale through Rice he stated to appellant that the lat-
ter was entitled to the commission and that he would put
the money in the bank so that appellant and Rice could
"fight it out" concerning the right to commission.

This testimony was offered, we presume, in the na-
ture of an admission on the part of Miller of his liability
to appellant for the commission. We do not think, how-
ever, that it can be viewed in the light of an admission,
for the reason that appellant stated at the time that he
was going to put the money in the bank so that it could
be determined in litigation who was entitled to it. Cer-
tainly the alleged statement of Miller can not constitute
a contract, for there was no consideration for it, inas-
much as the sale was then being consummated, or had
been consummated, through Rice. And if treated as an
implied admission as to liability, it can have no force
as such, for the undisputed evidence in the case estab-

lishes the fact beyond controversy that the commission was earned by Rice and not by appellant.

So, in any view that we take of this case, the evidence plainly shows that appellant has not earned the commission and is not entitled to recover anything in this action. The court was correct, therefore, in giving a peremptory instruction against him.

Miller cross appeals from that part of the judgment which awards the costs against him; and our conclusion is that that part of the judgment is erroneous. Miller was not liable for any costs in an action instituted by appellant, for the latter has failed to establish any right of action. Miller has not disputed the claim of Rice, but, on the contrary, conceded the right of the latter to recover the commission. He should not, therefore, be subjected to the payment of costs at the instance of appellant.

The judgment in favor of Rice is therefore affirmed and the judgment against appellee Miller for costs of the action is reversed and judgment will be entered here against appellant for the costs of the action as well as for the costs of this appeal.