HARRISON *v.* UNITED FARM AGENCY.

5-157                                    262 S. W. 2d 293

Opinion delivered October 26, 1953.

Rehearing denied December 14, 1953.

*Collins, Core & Collins,* for appellant.

*Shaw & Spencer,* for appellee.

WARD, J. This suit was brought by appellee, O. E. Butterworth, as agent for the United Farm Agency, to recover from appellants the sum of $1,250 claimed as a commission for selling their farm near Mena. It was contended by appellants that appellee was not entitled to any commission because he did not procure the purchaser in accordance with the contract and agreement between the parties. The case was tried, on agreement, before the Circuit Judge sitting as a jury.

Most of the essential facts are not in dispute. On January 14, 1950, while Evelyn Harrison was living at Panama, Oklahoma, and her husband was working near Mena they signed a sales agreement whereby appellee was to sell their farm consisting of 301 acres for $12,500 for a commission of 10 per cent. It later developed that the farm was owned by the wife. On November 15, 1950, appellee, having procured a prospective buyer in the person of Henry C. Vanadore, prepared a lease contract which was signed by H. J. Harrison and the said Henry C. Vanadore whereby the latter leased the premises for $500 for the year 1951. Contained in the lease contract

was an option for Vanadore to purchase said property at the said price of $12,500 at any time prior to November 15, 1951. The lease also provided that Mrs. Harrison should have possession of or collect the rents from a four-room tenant house located on the premises and that Vanadore would give immediate possession at the expiration of the lease.

On September 13, 1951, appellant, Evelyn Harrison, entered into a written contract with Vanadore whereby she agreed to sell him the farm for the price of $12,500, part of which was paid down and the balance to be paid later. Mrs. Harrison agreed that if Vanadore paid her a specified sum by January 1, 1952, she would deliver to him her warranty deed. It was noted in the contract that Vanadore was in possession of the land and would continue in possession as her tenant until January 1, 1952, at which time he would be permitted to remain in possession under the terms of the contract.

Appellants make numerous objections to the findings of fact by the trial judge but two principal grounds are urged for a reversal. First, it is insisted that Mrs. Harrison did not authorize her husband to insert the option clause in the lease contract to Vanadore and she did not know he had done so for 6 or 8 months thereafter; and that she never ratified the same. Second, it is insisted that Mr. Harrison did not own the land and did not sign the sales contract to Vanadore and therefore should not be held liable for part of the commission.

FIRST. It is our opinion that there is substantial evidence to sustain the trial judge in holding that Mr. Harrison was acting as the agent for his wife when he executed the option contract to Vanadore and, to the same effect, that Mrs. Harrison ratified the contract entered into by her husband. We set out below some reasons for this conclusion.

(a) It is not denied that Mrs. Harrison signed the sales agreement with appellee and that it was not disclosed at the time that she was the sole owner of the land. Therefore when, some months later and pursuant to the sales

contract, Mr. Harrison executed the option contract to Vanadore at the instance of appellee it was reasonable for appellee to assume at the time that Mr. Harrison was also acting for or with the consent of his wife.

(b) It is not denied that the $500 rental mentioned in the option contract was paid to Mr. Harrison and deposited in an account to him and his wife, and Mrs. Harrison at no time offered to refund the money.

(c) It is apparent that regardless of whether Mrs. Harrison knew of and approved the option contract at the time it was signed she did know about it in September 1951 [before the option had expired] when she agreed to sell the land to Vanadore. It is also undisputed that Mrs. Harrison was aware that appellee had obtained Vanadore as a prospective purchaser and that Vanadore held a written option to buy the farm.

(d) Mrs. Harrison herself testified that she guessed she accepted the acts of her husband in leasing the property and she says that she okayed the lease contract, but she made no effort to rescind when she later learned it contained the option to buy.

(e) When the sales contract to Vanadore was executed by Mrs. Harrison in September, 1951, she acknowledged therein that Vanadore was in possession of the farm and that he could remain in possession, which indicated she was approving the original lease.

Notwithstanding the fact that the deed from Mrs. Harrison to Vanadore was not executed until January 27, 1952, yet the contract to deliver the deed was, as stated, executed in September, 1951, at a time when Vanadore's option to purchase was still in effect, and she had full knowledge that appellee was solely responsible for procuring Vanadore as a prospective purchaser. In the case of *Harris & Hull* v. *McCarty-Vaughan-Evans Corporation,* 283 P. 111 (Calif.), the purchaser of certain lands sued the owners of the lands for specific performance of a contract of sale which the owners contended was signed by a person not authorized by them. Judgment was given

for the defendant owners but was reversed by the Appellate Court using this language:

"Respondents contend that the contract was not executed by any person having authority to bind the seller. This may be conceded for the purposes of this opinion, but the alleged contract was delivered to the defendants, and, admittedly, the plaintiff paid them, and, with knowledge of the terms of the contract, they accepted four payments thereon, aggregating $1,960.12, which they still retain. This was such a ratification of the contract as to bar any defense on the ground of want of authority to execute it."

As heretofore stated the trial was had before the judge sitting as a jury and of course, his findings will have the same force and effect as the findings of a jury. We cannot say there was no substantial evidence to support the finding of fact that Mrs. Harrison either authorized or ratified the lease-option which was executed by her husband. Somewhat the same situation was considered in the case of *Miller* v. *Green*, 227 S. W. 984, not carried in the Arkansas Reports. The court there stated:

"It was purely a question of fact under the evidence as to whether or not Leatherwood was the agent of the appellant having authority to enter into a contract with appellee to sell her lands. But, if the jury had found that he was not such agent and had no such authority, it was still a question for the jury to determine as to whether or not the appellant had knowledge of his unauthorized acts, and whether or not, having such knowledge, she ratified and approved the same."

SECOND. It was not error for the trial court, under the facts and circumstances of this case, to render judgment against the husband, H. J. Harrison, even though the proof shows that the title to the farm was held in the name of his wife. The undisputed proof shows: (a) Mr. Harrison signed the Listing Agreement wherein he agreed to pay a 10 per cent commission to appellee. The agreement did not show that Mrs. Harrison claimed to be the

sole owner but on the contrary it does show that under both of their names appeared in print the following: "signatures of record owners"; (b) When the lease-option agreement was signed the first rent payment by Vanadore was deposited in the name of both husband and wife; (c) At the time the suit was filed writs of garnishment were issued against the Planters National Bank of Mena and the Union Bank of Mena. The answer to these writs showed that the Union Bank had on deposit the sum of $166.94 in the name of Mr. and Mrs. Harrison, and that the Planters Bank had no deposit for either of them. In addition to the above a garnishment was issued against the purchaser, Henry C. Vanadore, who admittedly still owes money to one or both of the appellants. Since it appears that the proceeds of the sale may have been treated as community property appellee was entitled to a judgment against both to insure the collection of any judgment rendered in his favor.

A similar situation obtained in the case of *Manzo v. Boulet*, 220 Ark. 106, 246 S. W. 2d 126, where this court, in holding Mrs. Manzo owed the full commission though she only had a 49 per cent interest in the property, said:

"There is no evidence that Boulet was ever told that the business was incorporated or put on notice that the Manzos meant to employ him on the basis of their stock ownership. On the contrary, the proof is that the Manzos described the physical assets of the business and together agreed to pay the commission if Boulet sold the concern."

It is specifically pointed out by appellants that this case should be reversed because the sale was not consummated within the time provided in the Listing Agreement, citing cases to support this contention. In the usual case appellants' contention would be right. It must be borne in mind, however, that here we are dealing with a series of written instruments which are all linked together and are overlapping. It is our conclusion that, under all of the facts and circumstances previously set forth herein, Mrs. Harrison, by failing to repudiate the lease-option contract when she became aware of its terms and by executing a

sales contract with Vanadore [the purchaser produced by appellee] before the lease-option contract had expired, in effect agreed to an extension of the Listing Agreement. It is abundantly clear that the lease-option contract was a direct result of the Listing Agreement which Mrs. Harrison signed.

In accordance with the views above expressed the judgment of the lower court is affirmed.

ED. F. McFADDIN, Justice (dissenting). The majority holds that the Harrisons, as the landowners, are liable for a real estate commission claimed by the broker (United Farm Agency and Butterworth), even though the sale of the property was consummated several months after the expiration of the broker's contract. From that holding I dissent. It is my view that the broker is not entitled to any commission in this case, because (a) the sale was not made within the time stated in the broker's contract of employment; (b) the owners are not accused of bad faith; and (c) the owners did no act to extend or waive the time limit set out in the broker's contract of employment.

On January 14, 1950, the owners (Mr. and Mrs. Harrison) listed the farm for sale with the broker, and signed a contract (on forms provided by the broker),[1] which provided in part: "I grant you the right to procure a purchaser, ready, able and willing to buy said property . . .", at the designated price, and "I agree that this contract shall remain in effect for a period of one year, and that when terminated there shall be no charge for expenses, commissions, or otherwise against me. However, if within 90 days after termination I sell the property to a purchaser procured through you or your representative, I will immediately pay you the full commission . . ." The contract was dated January 14, 1950. The year expired January 13, 1951, and

1.   The rule that a written contract is to be strictly construed against the writer applies to a real estate broker's contract, as well as any other contract. See *Peebles* v. *Sneed*, 207 Ark. 1, 179 S. W. 2d 156.

the 90 days thereafter expired on April 13, 1951. The sale herein was not made until September 13, 1951, which was 5 months after the year and 90 days provided in the contract.

All of the activities of the broker were conducted by Butterworth. He showed the farm to Mr. Vanadore, who was at that time unwilling to buy, but wished to rent the farm with an option to purchase. Accordingly, on November 15, 1950, Harrison signed such a contract with Vanadore, leasing the farm for one year at a rental of $500.00 cash, and giving Vanadore one year in which to exercise the option to purchase. Butterworth delivered the $500.00 rental money to Harrison, without claiming any commission. No further effort was made by the broker to sell the farm to anyone, and no request was made for a renewal of the contract with the Harrisons. When Vanadore exercised his option on September 13, 1951, the papers were prepared and the trade completed without any services on the part of the broker. The Harrisons did nothing to impliedly extend the broker's contract, or to waive the time limit which the broker had placed in the contract. In allowing the broker to recover in this case, the majority of this Court is saying that if a broker, who has a time limit for completing a sale, can inveigle the owner into leasing the property for any length of time under a contract containing an option for the lessee to buy, then the land owner must pay the broker the commission on the sale if the lessee *ever* exercises the option. I cannot agree with such holding.

The broker's contract in this case stated that he would not be entitled to a fee for a sale of the property unless he produced—within the year and 90 days—a purchaser ready, able and willing to buy; and it is admitted that within that period of time, the broker did not produce such a purchaser. In *McCurry* v. *Hawkins,* 83 Ark. 202, 103 S. W. 600, we held that when the broker's contract of employment stipulated that the sale should be made within a limited time, the broker was *not* entitled to his commission if he failed to produce

a buyer within the time stated. Likewise, in *Murray* v. *Miller,* 112 Ark. 227, 166 S. W. 536, we find this language:

"According to the undisputed evidence in this case, the appellant has not shown himself entitled to a commission, and the Court was correct in giving a peremptory instruction. This is so on two distinct grounds. In the first place, appellant's authority was limited to a specified time, and the rule is that under a contract thus limited the agent must produce a purchaser 'ready, willing and able' to purchase within the time specified. If he fails to do that, he is not entitled to a commission, even though a sale is subsequently made by the owner to a purchaser who had negotiated with the agent. *Brown* v. *Mason,* 155 Cal. 155, 99 P. 867, 21 L. R. A., N. S., 328. This is, of course, subject to the rule that the owner must act in good faith and not hinder or interfere with the agent in his effort to make a sale during the period of the contract. Good faith on the part of the owner is the test of his liability, under a contract thus limited, unless the agent produces a purchaser within the time limited in the contract. *The Addressograph Co.* v. *The Office Appliance Co.,* 106 Ark. 536, 153 S. W. 804; *Greenspann* v. *Miller,* 111 Ark. 190, 163 S. W. 776."

In American Law Institute's Restatement of the Law of Agency, in § 446, the holdings are summarized in this language:

"An agent whose compensation is conditional upon his performance of specified services or his accomplishment of a specified result within a specified time is not entitled to the agreed compensation unless he renders the services or achieves the result within such time, except where the principal, in bad faith, has prevented him from doing so."

As previously stated, there is no claim that the Harrisons acted in bad faith in this case. Furthermore, in the discussion following said § 446 of the Restatement, this appears:

"If, after the time limit has expired, the broker continues his efforts with the seeming approval of the principal who, by his conduct, appears to recognize the agency as subsisting, it may be inferred either that the principal has extended the time within which he is willing to pay the stated commission or that the principal agrees to pay the broker a reasonable compensation (not necessarily the amount previously offered) for subsequent successful efforts of the broker. But the mere fact that the broker continues his efforts to the knowledge of the principal is not enough to warrant this interference, nor is it sufficient that the principal himself re-opens negotiations with a customer previously found by the broker."

The last sentence covers the situation here. Many cases involving similar situations are collected in the Annotation in 26 A. L. R. 784, entitled, "Broker's right to commission as affected by failure to consummate sale within time limited by terms of employment". The rule is well established, and I regard the present holding as a departure from well established cases.