BODINE *v.* PENN LUMBER COMPANY.

Opinion delivered April 9, 1917.

1. APPEAL AND ERROR—ISSUES SHOULD BE SUBMITTED TO JURY, WHEN.—
Where the testimony is conflicting, or the legitimate inferences to be
drawn therefrom are conflicting, the case should be submitted to the
jury.

2. BROKERS—REVOCATION OF AUTHORITY TO SELL.—The authority to a
broker to sell may, in good faith, be revoked at any time, in the
absence of a stipulation to the contrary.

3. BROKERS—COMPENSATION—REVOCATION OF AUTHORITY—SALE BY
OWNER.—Where a broker, with authority to sell defendant's timber
lands, failed to do so, the owner will not be liable to the broker for
commissions, where the owner, after the lapse of a year, sold the
timber to a party whom the broker had introduced to him.

Appeal from Clark Circuit Court; *Geo. R. Haynie,*
Judge; affirmed.

*McMillan & McMillan,* for appellant.

1. It was error to direct a verdict for defendant.
89 Ark. 372. There was a contract, and under it a par-
tial sale was consummated. 80 Ark. 247.

2. The case should have been submitted to the jury
with instructions. 84 Ark. 462-7; 53 *Id.* 49; 89 *Id.* 195,
207-8; 110 *Id.* 140; 121 *Id.* 534.

3. Plaintiff was the procuring cause of the sale.
He brought the parties together and turned the pur-
chaser over to the defendant.

4. The question of the good faith of defendant in
calling the deal off was for the jury. 95 Ark. 144.

*John H. Crawford* and *Dwight H. Crawford,* for ap-
pellee.

1. On the facts the court properly directed a ver-
dict. All of plaintiff's propositions fell through, and the
deal was declared off. There was nothing for a jury.

2. The agency was revoked in good faith more than
twelve months before the sale was made. 84 Ark. 462;
106 *Id.* 536, 544; 72 W. Va. 195; 103 Ala. 641; 83 N. Y.
387; 19 Cyc. 192; 38 Am. 441; 15 So. 900; 49 L. R. A. (N.
S.) 985.

3. The contract was indivisible. 24 Minn. 354; 125 *Id.* 179; 51 L. R. A. (N. S.) 254. No recovery can be had on a *quantum meruit.* 181 S. W. 11. Under no theory could plaintiff recover.

McCULLOCH, C. J. The plaintiff, L. A. Bodine, alleges that he was employed by the defendant to sell certain property, the latter to pay a commission on the sale, and that he produced a purchaser to whom the defendant subsequently sold a portion of the property. This is a suit to recover the amount of commissions alleged to have been earned on the sale.

(1) Defendant, Penn Lumber Company, is a corporation operating a mill at Beirne, Clark County, Arkansas, and owned a sawmill, logging railroad, cars, locomotives and a large body of timber lands. In February, 1914, defendant entered into a contract with the plaintiff authorizing him to sell certain property and agreed to pay plaintiff a commission on the sale. The property specified to be sold embraced 9,000 acres of timber land, a sawmill, eight miles of steel railroad, ten logging cars, two locomotives, tenant houses, store and office buildings. The timber was estimated at 55,000,000 feet of gum, oak, hickory, cypress, ash and elm. The price specified was $180,000, and defendant agreed to pay plaintiff a commission of $10,000 on the sale. The contract stipulated that there was to be "a prompt sale only." All the negotiations between the two parties were by written correspondence through the mails, and there is no dispute as to the contents of the correspondence or as to what was done thereunder. The trial court directed the jury to return a verdict in favor of the defendant, and the only question with which we are concerned now is as to the correctness of that direction. If there was a conflict in the testimony or as to the legitimate inferences which might have been drawn therefrom, then the case ought to have been submitted to the jury for a determination of the issue.

The correspondence between the parties began on February 7, 1914, and on February 12, 1914, plaintiff, in a letter to defendant of that date, made the following inquiry: "You say in your letter you will pay me a commission of $10,000 if I furnish you a customer who buys per the enclosed proposition. I understand this to mean I am to get this same commission if I furnish a party who buys at any proposition agreed on between you and him. Is this correct?" Defendant replied by letter as follows: "We have yours of the 12th. Yes, we will expect to pay you the commission of $10,000 if you furnish us a buyer for the property as per ours of the 7th and we make him a different trade. You to accept the same terms on your commission as we accept on the trade in the same proportions. However, we would not consider a price any less than we have named."

The plaintiff opened up negotiations with the McLean Hardwood Lumber Company, a concern located and doing business at Memphis, Tenn., and in March a representative of that corporation accompanied plaintiff to the locality where the property in question was situated and was introduced to defendant's representative as a prospective purchaser. They looked over the property together and the plaintiff left the proposed purchaser in the hands of defendant's representative to make a sale. The McLean Hardwood Lumber Company sent its representative on a number of trips to inspect the property, and negotiations continued up to the month of August, 1914, when they were entirely broken off by a letter to the defendant in which the definite statement was made that the McLean Hardwood Lumber Company would "drop the matter entirely, for we could not expect you to hold the proposition open indefinitely for us." Defendant immediately addressed a letter to plaintiff as follows:

"Beirne, Ark., 8/22, 1914.

Mr. L. A. Bodine, Huttig, Ark.:

Dear Sir: We have decided to take our property off the market and are compelled to call our deal with you off. The interest account is so heavy we expect to operate a little heavier if business will let us.

The McLean H. L. Co. have called the deal off.

The writer is leaving for the North to be gone three weeks, and while I am gone expect to make other arrangements for operating.

Thanking you for the interest you have taken and regretting we could not make the deal, we remain,

Yours very truly,

Penn Lumber Company,

Per J. G. Greene, Secy-Treas."

There were no further negotiations or dealings between plaintiff and defendant thereafter, except that several times plaintiff inquired by letter about the sale of hickory timber on the land. Nor were there any further negotiations between the defendant and the McLean Hardwood Lumber Company for a year, but after a year had elapsed defendant's agent went to Memphis and took the matter up again with the McLean Hardwood Lumber Company and made a sale of the oak, ash and cypress timber on the land embraced in the negotiations with the plaintiff and certain other lands in another county, the price on that sale being $50,000, and the contract also embraced an agreement on the part of the defendant to do the logging in getting the timber out.

(2) The contention of the plaintiff is that he was the procuring cause of the sale and is entitled to a commission, notwithstanding there was a cancellation or withdrawal of the agency long before the sale was made. We do not think this contention is well founded. There was no length of time specified in the contract between plaintiff and defendant, and the authority to sell was revocable at any time, subject only to the limitation that it should be done in good faith. The *Addressograph*

*Co.* v. *The Office Appliance Co.,* 106 Ark. 536; *Greenspan* v. *Miller,* 111 Ark. 190; *Murray* v. *Miller,* 112 Ark. 227.

(3) There was, according to the undisputed testimony in the case, an unconditional withdrawal of plaintiff's authority to sell in August, 1914, and there were no further negotiations between the parties concerning the sale to the proposed purchaser, nor is there any dispute in the testimony which relates to the good faith of the defendant in withdrawing the offer. The jury could not have reasonably drawn the inference that the agency was withdrawn in bad faith for the purpose of depriving the plaintiff of his commission upon the resumption of the negotiations with the proposed purchaser. There was, in other words, a complete severance of relations between the defendant and the proposed purchaser, and it was more than a year before the negotiations were resumed, and then they were taken up and concluded upon an entirely different basis. Now, the cases just cited declare the law to be that an owner who has given authority to a party to sell his property has a right to withdraw the offer if done in good faith, and the mere fact that the agent has been instrumental in the introduction of a proposed purchaser does not necessarily give him the right to a commission on a sale subsequently made by negotiations between the owner and the purchaser. Of course, the owner has no right to withdraw the authority for the purpose of preventing the agent from making a sale, but if a reasonable opportunity has been given to the agent to make a sale and he has failed to produce a purchaser who is ready, willing and able to purchase on the terms specified, then the owner has the right to withdraw, and if he subsequently makes a sale he is not liable for a commission, even though it be a purchaser who was originally introduced by the agent. The test, in other words, is good faith on the part of the owner in withdrawing the authority from the quondam agent, and that question should, of course, be submitted to the jury where there is a conflict in the

testimony or where the circumstances are such that different inferences might be reasonably drawn, but in the present case there is not the slightest testimony that would justify the inference that the offer was withdrawn in bad faith. A verdict in favor of the plaintiff on that issue would have been entirely unsupported by evidence, and, therefore, the court was correct in refusing to submit the issue to the jury. There is nothing in the cases cited by learned counsel for the plaintiff which militate against the views here expressed. They rely principally on the case of *Scott* v. *Patterson,* 53 Ark. 49, but in that case there had, according to the accredited evidence, been no withdrawal of the authority to sell and a sale was finally made by the owner to a purchaser who had been introduced by the agent or broker, and this court in deciding the case said that "if the agent introduces the purchaser or discloses his name to the owner, and through such introduction or disclosure negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner." Another case relied upon is that of *Branch* v. *Moore,* 84 Ark. 462, but the facts of that case were entirely different from those in the present case. In that case the facts were that the agent had procured a purchaser "ready, willing and able," but the owner declined to consummate the sale on the grounds that his wife would not sign the deed, and a few days later made the sale to the same purchaser whom the agent had introduced. This court decided that there was enough evidence to warrant a verdict in favor of the agent, and that he was entitled to his commissions, and in disposing of the matter the court said: "Appellant contends that he had the right to revoke the agency of appellee at any time before the sale. This is true, if done in good faith. But he could not do so for the purpose of depriving him of his reward and appropriating his services without compensation. He could not make the revocation a pretext for defrauding appellee."

Counsel for defendant submit other reasons why the judgment should be affirmed, but it is unnecessary to discuss the matter any further, for the decision of the court was a correct one upon the grounds already stated.

Affirmed.