SCHIFFLIN *v*. SMITH.

Opinion delivered May 20, 1918.

1. REAL ESTATE BROKERS—SELLER MAY REVOKE AGENCY—WHEN.—In the absence of a specified time for the duration of a real estate broker's agency, the principal may, at will, even before a reasonable time has elapsed, revoke the broker's authority provided the revocation is in good faith.

2. REAL ESTATE BROKERS—REVOCATION OF AGENCY.—Where the owner of land has revoked the agency of a broker to sell the same, he may refuse thereafter to sell to any purchaser produced by the broker, and his reason for such refusal is immaterial.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; affirmed.

*James D. Head,* for appellants.

1. The court erred in its instructions. Where a real estate broker produces a purchaser ready, able and willing to buy upon terms authorized, he is entitled to his commission whether the right of revocation exists or not. 91 Ark. 212; 112 *Id.* 566; 89 *Id.* 195.

2. The owner has no right to withdraw the authority to prevent the agent from making the sale. 194 S. W. 226; 106 Ark. 536; 111 *Id.* 190; 112 *Id.* 227; 84 *Id.* 462. See also 199 S. W. 542; 45 Ark. 37; 33 *Id.* 465; 83 *Id.* 548; 96 U. S. 258; 4 R. C. L., § 14.

*Webber & Webber,* for appellees.

1. Appellee never listed his land with appellants for sale, nor agreed to pay a commission, but, if he did, he terminated and revoked the agency in good faith, before a buyer was procured. The question was for the jury and their verdict has settled the matter. 101 Ark. 141; 104 *Id.* 162; 200 S. W. 790.

2. There is no error in the instructions. 106 Ark. 536; 83 N. Y. 378. The principal may revoke the agent's authority at any time in good faith. 111 Ark. 190; 194 S. W. 226. The case was fairly submitted to the jury under proper instructions, and the verdict should not be disturbed.

F. W. Schifflin and J. W. Periman sued J. T. Smith to recover $500 alleged to be due them for commissions on the sale of certain lands belonging to Smith.

According to the evidence of the plaintiffs they were real estate brokers and J. T. Smith listed with them two hundred acres of land for sale at $50 per acre. The sale was to be either for cash or on a credit and Smith agreed to pay them a commission of 5 per cent. for making the sale. The plaintiffs agreed upon a sale to a Mr. Phillips at $50 per acre and notified Smith to come to their office to close the deal, and they then told him that Phillips was not able to carry out his trade. The plaintiffs soon afterwards carried C. T. Howard to look at the place. He offered them $8,000, which they refused. Plaintiffs then showed the property to other parties. In a few days Howard came back to see the plaintiffs again and wished to look over the place. On their way they met Smith and told him that Howard had come to look over the place again. Smith told them that he did not know whether he could sell it or not as he had leased it. They asked him when he had leased it. He replied, that day. Smith went back with them and looked over the land and Howard agreed to pay them $10,000, the price he asked for the land. Smith refused to complete the sale on the ground that he had already leased the place. Smith had not told them that he was going to lease the land if they did not sell it in a few days. He said nothing about taking the land off of their list. Howard had $10,000 with which to pay for the land and offered it to Smith. Smith refused to let him have the land at all.

According to the testimony of Smith, he never listed the land with the plaintiffs, but they came to his house, looked over his land and offered him $35 an acre for it. He supposed they were going to buy it themselves and did not know they were real estate brokers. He refused to sell to them at that price. A few days thereafter they notified him that they had a purchaser for his place and asked him to come to their office to meet him. When

Smith arrived at their office, the plaintiffs showed him a written contract which they had prepared. It provided for the payment of $1,000 in cash and for $1,000 in yearly payments for nine years thereafter. Smith asked them where their commission was coming from and they told him that it would come out of the first $1,000 and would be $500. Smith told them that he was asking $10,000 for his land and would not pay them any commission. The prospective purchaser came in and notified them that he was not able to make the purchase. Smith had no further talk with the plaintiffs for several days and never thought any more about them trying to sell his land. He had not listed it with them. Five or six days later he received word to call plaintiffs up and went to their office. They told him that they had an offer of $8,000 for his land. He told them that he would not take less than $10,000 and that they could just consider the whole thing off; that he was going to lease the land and go back to north Arkansas where he lived. A few days thereafter he met them and they told him that they were taking Howard to look at his land. Smith told them that he had already leased it and that it would be no use to take him. They insisted on Smith going back with them. He did so, but told them that he could not sell them the land because he had already leased it. He was corroborated in his statement as to what happened on this occasion by his fourteen-year-old son.

The jury returned a verdict for the defendant and the plaintiffs have appealed.

HART, J., (after stating the facts). (1) The principal ground for reversal relied upon by counsel for the plaintiffs is that the court erred in refusing to instruct the jury that the defendant, if he did employ plaintiffs to sell his land, could not withdraw it from them without their consent until after they had had a reasonable time in which to make the sale thereof on the terms authorized. There was no error in refusing this instruction. The rule in this State is that, in the absence of a specified time for the duration of a real estate broker's agency, the prin-

cipal may at will, even before a reasonable time has elapsed, revoked the broker's authority, provided the revocation is in good faith. *Greenspan* v. *Miller,* 111 Ark. 190, and *Bodine* v. *Penn Lumber Co.,* 128 Ark. 347. The court instructed the jury in accordance with the principles of law laid down in these cases and the court did not err in refusing to instruct the jury that the broker was entitled to a reasonable time within which to make the sale.

(2) It is next insisted that the court erred in refusing to instruct the jury that if the sole objection made by the defendant for not closing the deal with Howard was that he had leased the ground, he is now estopped from defending on the ground that the terms offered were not those authorized or that he had not agreed to furnish an abstract. If the defendant in good faith had revoked the authority of the plaintiffs before they had procured a purchaser ready, willing and able to purchase the land, it does not make any difference upon what ground he places his refusal to complete the sale. If he had revoked their authority he could arbitrarily refuse to sell his land and they would have no cause of complaint. The disputed issue of fact between the parties was whether or not the defendant had revoked the authority of plaintiffs before they had the immediate prospect of making the contract with Howard.

According to the testimony of the plaintiffs they had brought Howard to examine the land the second time with the view to purchasing it before they were ever notified that the defendant would revoke their authority.

According to the testimony of the defendant, he revoked their authority at the time they first made the offer of $8,000 for Howard. This was several days before Howard came back and renewed his negotiations for the land. This disputed question of fact was, as we have already seen, submitted to the jury upon proper instructions, and it did not make any difference that Smith may have assigned other reasons for not having completed the deal with Howard.

We find no prejudicial error in the record and the judgment will be affirmed.