KENNETH W. LAZENBY, D/B/a KEN LAZENBY REAL ESTATE CO. v. JAMES H. NEWELL AND SALLY RAYLENE NEWELL, HIS WIFE

5-5593                                    467 S. W. 2d 734

Opinion delivered June 7, 1971

*Estes & Storey*, for appellant.

*Murphy, Carlisle & Taylor,* for appellees.

CARLETON HARRIS, Chief Justice. This appeal relates to whether Kenneth W. Lazenby, appellant herein, is entitled to a commission for the sale of certain real estate in Washington County, Arkansas. Lazenby, d/b/a, Ken Lazenby Real Estate Company was contacted in September, 1968, by appellees, James H. Newell and wife, Sally Raylene Newell, for the purpose of employing appellant to sell their property located at Farmington, Arkansas. An "Exclusive Listing Contract" was executed by the parties, Lazenby retaining the original, and the Newells keeping a yellow copy. The contract provided for a 6% commission. Lazenby immediately went to the Newell property, inspected it, and placed a "For Sale" sign in the front yard, the sign reciting "For Sale, Ken Lazenby Real Estate Company, 927 North College Avenue, Fayetteville, Arkansas". Appellant prepared an ad describing the property and placed it in the Northwest Arkansas Times. The testimony reflects that two parties were shown the property, but no sale was made; however, according to Lazenby, he talked with numerous people who responded to the ad, and also others by telephone who noticed the "For Sale" sign in the yard. It appears that in October of 1968, on a Sunday night, after Lazenby had retired, a party called and said that he had been driving in Farmington and noticed the sign advertising the Newell property, was interested in it, and would like to have the details. The caller then identified himself as a man named Niccum. According to Lazenby, he had very recently had a problem with a man by the same name, and he thought he was talking with the same party. He was irritated—for two reasons, one because it was late at night, and the other, because he thought Niccum was the same person with whom he had had prior difficulties. Thereafter he discovered that the Niccum who called was an entirely different person, Mr. Newell coming to the office the last of November, and being quite upset about the possible loss of a sale of his property. Lazenby said he admitted that he was wrong, and apologized. Lazenby also called on the Niccums and apologized, and was told that in the event they

could arrange to buy the property, he would be contacted. According to appellant, he reported this conversation to the Newells the first week in December, offering to cancel the listing in the event they thought he had rendered a disservice, but he said they told him to go ahead and continue to try to sell the realty. Newell testified however, that Lazenby said, "We could go ahead and continue with him and he would sell the house for us or if we sold the house, we didn't owe him a commission". Thereafter, the testimony reflects that on January 27, 1969, Newell went to Lazenby's office, bringing his yellow copy with him; the evidence is in dispute as to what happened. Newell says that he told Lazenby "Your contract says you need a seven-day written notice" and he inquired if that was necessary, Lazenby replying "No, come in and I will cancel it out". Newell said that he told appellant that appellees were going to apply for a loan to build a house on some property they had acquired, and if they could get a loan, they would keep the property as rental property. He also stated that they had applied twice for loans but had been unsuccessful. Lazenby gave the following version, "At the time Mr. Newell came into the office to—he brought his yellow copy in and he wanted me to cancel it because he didn't want to go ahead and sell. It has been my policy that in the event there is illness or some tragedy in the family, or in the event they decided not to sell and to rent the property, then I forego charging a commission. * * * I assumed the man was going to rent his property but I subsequently found out he actually had it sold the day he came in and wanted me to cancel it." Subsequently, Lazenby testified that "they wanted to build a house on this particular property and that they wanted to use their equity from this subject property to build the new one with. So, we discussed this matter when Mr. Newell came in to cancel the listing and, as I understand it, he told me that he found the cost of building was quite high now and he thought he would just sit back and maybe even rent the property that he had for a while until things settled down where he felt he could afford to build it. Had I known the man had already made a sale on the property, naturally I wouldn't have entertained any thought of cancelling

the listing because he and his wife employed me to make the sale and I used my best efforts to make this sale by spending money on advertising and time to introduce prospective purchasers to it."

Lazenby then wrote on Newell's yellow copy, "Owner requested a cancellation on this property so he may rent the property. Therefore, no broker's fee is charged." He signed it and handed the copy to Newell.

Tillman Tabor and his wife, Dora Lee Tabor, who live near Farmington, learned that the house was for sale in January, 1969, when passing by and observing the "For Sale Sign" that Lazenby had placed in the yard. They talked with the Newells, who priced it at $13,600, the price that Lazenby had listed. In early March, Tabor again met with the Newells offering to purchase the house for $12,400, and this offer was accepted. The purchase was made on March 13, 1969. Thereafter, Lazenby, learning of the sale, instituted suit for his commission. After the filing of an answer, and the denial of a motion for summary judgment, the case proceeded to trial, and at the conclusion of the evidence, the court, sitting as a jury, entered judgment finding that the contract between the parties had been cancelled after differences between the parties, and that in the month of January, 1969, Lazenby had, in writing, cancelled his contract. From the opinion:

"That the cancellation in writing of this exclusive listing contract by the plaintiff with the specific wording, 'Therefore no broker's fee is charged' effectively ended any obligation on the part of the defendants to pay a broker's fee to the plaintiff even though there was a subsequent sale of the pertinent property."

Appellant's complaint was dismissed, and from the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the trial court erred in permitting appellee to introduce oral testimony of an alleged cancellation of the written contract. It actually is not necessary to discuss this point since the court's finding of cancellation was based on the written nota-

tion made by Lazenby on the copy of the contract, and we determine the litigation on that basis. It might be stated however that appellant's assertation is in error. See *Nance* v. *McDougald,* 211 Ark. 800, 202 S. W. 2d 583, where we upheld the cancellation of a written contract by an oral revocation.

It is next contended that the trial court erred in failing to hold as a matter of law that appellant was entitled to a judgment for his real estate commission. This argument is largely based on the fact that the Tabors were made aware of the fact that the Newell property was for sale by virtue of having seen appellant's sign in the front yard. We disagree with the contention. In *Bodine* v. *Penn Lumber Co.,* 128 Ark. 347, 194 S. W. 226, a similar argument was made, but in holding contrary to such a contention, this court said:

"Now, the cases just cited declare the law to be that an owner who has given authority to a party to sell his property has a right to withdraw the offer if done in good faith, and the mere fact that the agent has been instrumental in the introduction of a proposed purchaser does not necessarily give him the right to a commission on a sale subsequently made by negotiations between the owner and the purchaser. Of course, the owner has no right to withdraw the authority for the purpose of preventing the agent from making a sale, but if a reasonable opportunity has been given to the agent to make a sale and he has failed to produce a purchaser who is ready, willing and able to purchase on the terms specified, then the owner has the right to withdraw, and if he subsequently makes a sale he is not liable for a commission, even though it be a purchaser who was originally introduced by the agent."

Finally, it is asserted that there is no evidence of a substantial nature in the record to support the findings of the trial court. Again, we are unable to agree with appellant. As found by the trial court, the cancellation of the contract, with the words, "therefore no broker's fee is charged" effectively severed the contractual relationship between the parties. From a legal standpoint, under

the pleadings in this case, it makes no difference why Lazenby cancelled the contract, the pertinent fact being that it was unquestionably cancelled. Appellant seems to be arguing that a fraud was practiced upon him; that he was induced to cancel the agreement through false representations made by appellee, and that he would not have cancelled except for those false representations. But a careful search of the complaint reveals no such allegations; it is simply asserted that the sale from the Newells to the Tabors was made due to the efforts of Lazenby. If appellant felt that he had been overreached, and caused to cancel the contract through misrepresentations, he should have so alleged in the complaint that he instituted. While Lazenby stated he subsequently learned that the Newells had already sold the property on January 27, 1969, (date of the cancellation of the contract) there is no evidence in the record substantiating this statement. It will also be observed from the testimony of appellant, heretofore quoted, that he did not say Newell stated he wanted to cancel the listing so that he could rent the property; rather, appellant testified, "I *assumed* the man was going to rent his property . . ."; also "he thought he would just sit back and *maybe* even rent the property . . .".

As stated, we cannot agree there was no substantial evidence to support the finding of the trial court.

Affirmed.