McGill *v*. Grigsby.

4-6917 168 S. W. 2d 809

Opinion delivered February 22, 1943.

*Gaughan, McClellan & Gaughan,* for appellant.

*O. E. Westfall* and *McKay & McKay,* for appellee.

Griffin Smith, C. J. Two questions are presented: (a) When Helen Watts McGill purchased 1,750 acres did she have actual or constructive notice that timber deeds were outstanding? (b) If it be held that she was not an innocent purchaser, was the judgment against her to compensate damages for an erroneous injunction greater than it should have been?

Dr. S. D. McGill and Helen Watts McGill are husband and wife. Neill Slaughter was their agent. The land (owned by the Glidden Company, an Ohio corporation) was in several disconnected tracts. Prior to March 30, 1943, Slaughter wrote the Company, asking if the property were for sale, and if so what price was asked. An answer dated April 3 contained the statement: ''Inasmuch as the timber has been pretty well cut off of the property, [it is assumed] that your interest lies in possible oil development. . . . If we make a sale it would be an outright sale without reservations.''

Slaughter wired an offer of $11,500 ''. . . for the land, subject to no reservations.'' April 8th the Company replied that it would sell for $17,500. Slaughter immediately accepted by telegram, stating the sale was to be without reservations. He directed that a deed

". . . to all lands [you] own in Ouachita county" be sent to a designated bank, with draft attached. The Company, by letter, confirmed the telegram.

April 14 Slaughter wired the Company that the draft had been paid. He asked for a sworn statement that the deed embraced all of the Company's interests ". . . in and to all lands [it owned] in Ouachita county as of April 10, 1942." An affidavit was supplied.

April 13 Dr. McGill, without paying the draft, procured the deed. He took it to the courthouse where, aided by Slaughter, descriptions were checked with records. Having, apparently, satisfied himself, the deed was filed at 3:40 p. m. Slaughter then executed a deed to Helen Watts McGill, conveying property the Glidden Company's sale described. This document was filed at 4:15 p. m.

The following day (April 14, at 10:45 a. m.) Grigsby filed with the recorder a timber deed executed by the Glidden Company January 2, 1941.[1] By this deed the grantees became owners of ". . . all timber six inches and over in diameter." The right to enter with small mills was given. Four years were allowed for removal of the timber.

January 29, 1941, Grigsby conveyed to Gross and Janes all merchantable *hardwood* on the land. This deed was filed February 3, 1941.

When Dr. McGill, with the deed he had borrowed of the bank, went to the courthouse April 13, Bob Shelton, an abstracter, informed Slaughter there was a timber deed on record whereby Grigsby conveyed to Gross and Janes. Prior to that time Ed. Price[2] had told Slaughter the timber in question had been sold, and he thought it had all been cut.

After the Glidden Company's deed to Slaughter and Slaughter's deed to Helen Watts McGill had been filed, Dr. McGill's attorney called Grigsby and asked if he

[1] Grady S. Grigsby and J. W. Gossett did business at White City Lumber Company. The Glidden Company's deed of January 2, 1941, was to Grigsby and Gossett, but subsequently Gossett sold to Grigsby. The conveyance to Gross and Janes was by Gossett and Grigsby.

[2] Ed. Price was resident agent for the Glidden Company, but did not have authority to sell its lands.

claimed an interest. He also asked whether Grigsby was cutting timber, and whether he had sold the hardwood to Gross and Janes. Grigsby asserted his claim, whereupon Dr. McGill directed that operations cease. A written notice was received by Grigsby April 14, the same day Dr. McGill paid the Glidden Company's draft.

In one paragraph the grantor "remised, released, and forever quitclaimed all right, title, or interest," etc. In the succeeding paragraph, following description of the land, the language is that the grantor "remised, released, and forever quitclaimed all the estate, right, title, and interest of said grantor in and to said premises."

It is argued on behalf of appellee that the Company only intended to convey its interest, and in accepting the deed in this form McGill was put on inquiry.[3]

April 15, 1942, at suit of Helen Watts McGill, a temporary order restraining appellee was made. Gross and Janes were also made defendants. May 4th the injunction was amended. Effect was to permit appellees to remove all timber cut prior to April 15.[4]

By a decree of June 3 the chancellor dissolved the temporary injunction. Grigsby was given judgment against the two McGills for $913.05. Gross and Janes were awarded $580. The complaint of Helen Watts McGill was dismissed for want of equity.

It is not necessary to dwell at length upon effect of the quitclaim deed. Slaughter had been told by the Company that if it sold, the transaction would be without reservations. In accepting the offer of $17,500 in lieu of $11,500, Slaughter specified there should be no restrictions. He had a right, therefore, to think the conveyance would conform to the agreement, and could have insisted upon a warranty deed unless, as a matter of fact, he knew of the Company's timber sale, and as a reasonable man should have known the timber had not been removed. The Company's letter of April 3 informed

---

[3] See Miller v. Fraley, 23 Ark. 735, for discussion of the nature of notice given by a quitclaim deed.

[4] Dr. McGill, without objection, was made a party plaintiff May 29.

Slaughter the expression "reservations" had reference to oil development. The chancellor appears to have believed a preponderance of the evidence showed knowledge by Slaughter that the timber had not been removed. Small mills and a large number of men were being used on some of the tracts, a condition Slaughter and McGill might have ascertained with but slight inconvenience.

What seems to be the true status is that after Dr. McGill or his agent received information that Grigsby's timber deed to Gross and Janes was outstanding, the Glidden deed was filed and the McGills then accepted Slaughter's conveyance.

In these circumstances Dr. McGill consummated his purchase after receiving sufficient information to put a reasonably prudent man on notice. The deed covered only the interest owned by the Company April 10. It is true the deed from Grigsby to Gross and Janes conveying the hardwood was not notice that the Company had sold Grigsby the pine as well as other timbers; but Slaughter had independent information—at least there are circumstances and testimony sufficient to sustain this conclusion—and the chancellor did not err in dismissing the complaint.

Excessive damages were awarded. Suspension of operations was for nineteen days. The court arrived at the amount Grigsby should recover by allowing $256.80 as expense of moving, $156.25 to cover deterioration incident to 125 cords of pulpwood, and $500 as damages to 100,000 feet of logs.

Grigsby testified his *estimate* was that 100,000 feet of logs had been cut but not removed. However, he did not measure them. A witness for appellant who testified to actual scaling says 8,958 feet of logs were "banked," and that 33,475 feet "were in the woods." The two item total 42,433 feet. At $5 per thousand (a figure the chancellor used) the result is $212.17.

While Grigsby testified the cost of moving was $256.88, he also testified that the cost of sending a crew to gather the logs would be $75 or $80. Of course, the expense of sending men and trucks would not be equal to

cost of moving men and machinery from location. No facts are shown justifying a reduction of this item.

Allowance of $156.25 as deterioration to pulpwood assumed utilization of treetops; but, if these tops came from 42,433 feet of logs instead of 100,000 feet as contended for by appellee, the value would be $66.30, or a difference of $89.95. Appellants are entitled to this credit; also to an additional credit of $287.83, this being the difference between $500 and $212.17. Appellee is taxed with one-fourth of the appeal cost.[5]

---

[5] Gross & Janes made settlement and their judgment is not to be considered.