Marvin GEORGE and Laverne TEAS *v.* Shirley Dean GEORGE et al

CA 79-165 591 S.W. 2d 655

Opinion delivered December 5, 1979
Released for publication January 9, 1980

*Guy H. Jones, Phil Stratton, Guy Jones, Jr.,* and *Casey Jones,* by: *Guy H. Jones,* for appellants.

*Brazil, Roberts & Courtney,* for appellees.

ERNIE E. WRIGHT, Chief Judge. This appeal was filed in the Arkansas Supreme Court and transferred to the Court of Appeals pursuant to Rule 29 (3).

Shirley Dean George, a nominal appellee, was granted a decree of divorce in August, 1977 from Marvin George, who, along with his mother, Laverne Teas, are appellants from a decree rendered in December, 1978 cancelling a 99 year lease Marvin George had executed to Laverne Teas in August, 1976 for a recited rental consideration of $10.00 per year, plus payment of taxes.

Appellants contend the trial court erred in cancelling the lease.

The decree from which the appeal stems was pursuant to an intervention filed by Nathan E. Gentry and wife and by the trustees of the First Baptist Church of Mayflower, Arkansas, the respective purchasers of the two separate parcels of land sold at public auction as ordered in the divorce decree for the purpose of accomplishing the allocation of Mrs. George's statutory property rights upon divorce. At the commissioner's sale Mr. and Mrs. Gentry purchased the 10.3 acre tract of land and the trustees for the church, hereinafter referred to as "the church", purchased the 3 2/3rds acre tract of land.

Each of the two intervenors paid the respective purchase prices in full, the court confirmed the sale and the commissioner's deeds were issued to the respective purchasers. Mrs. George received from the clerk of the court her portion of the net proceeds awarded to her by the order of distribution dated November 22, 1977 and there was no appeal from that order.

The appellants have not accepted any of the funds arising from the sale and have refused to recognize the sale or surrender possession of the property to the purchasers. The purchasers filed interventions herein against Mr. George, made Mrs. Teas a third party defendant and sought cancellation of the lease as a cloud upon their titles.

Mr. George and his mother, Mrs. Teas, contend the lands were not subject to sale because of the 99 year lease Mr. George executed to his mother in August, 1976. The complaint of the intervenors alleged the lease was a fraudulent conveyance and a sham and should be decreed null and void.

It is true, the law does not preclude a husband from conveying in good faith, in absence of fraud, his interest in non-homestead real estate without the wife joining in the conveyance. However, where the wife does not join in the conveyance the grantee of such conveyance or lease takes title burdened with the dower interest of the wife. *Box* v. *Dudeck*, 265 Ark. 165, 578 S.W. 2d 567 (1979).

Chancery cases are tried *de novo* on appeal and if the decision is correct for any reason, we affirm. *Apple* v. *Cooper*, 263 Ark. 467, 565 S.W. 2d 436 (1978).

Following are some of the facts in evidence supporting the decree cancelling the lease:

(1) When Mr. George executed the 99 year lease to his mother in August, 1976, his wife did not join in the lease and had no knowledge of the transaction.

(2) The lease called for a consideration of only $10.00

per year for both tracts of land, plus pyament of taxes, and was signed by Mrs. Teas as lessee at the instance of her son.

(3) Prior to the execution of the lease in August, 1976 Mr. George had filed suit for divorce in June, 1976 and stated in the complaint there was no property to be settled. There had previously been one or more divorce actions filed by one of the parties against the other. Mrs. Teas was aware of the marital difficulties between the parties.

(4) The divorce was granted to Mrs. George pursuant to her complaint filed in May, 1977. She had no knowledge of the lease until after the court had ordered the land sold.

(5) The lease, although having a notary's signature and seal affixed and placed of record, was not acknowledged.

(6) The 3 2/3rds acre tract which had two rent houses and a mobile home thereon was the marital homestead of the parties. One of the houses rented for $45.00 per month and the other rented for $35.00 per month. Mr. and Mrs. George resided in the mobile home.

(7) The two tracts sold for a total sum of $12,550.00 at the commissioner's sale.

(8) Mr. George continued to look after the property and was living on the 3 2/3rds acre tract at the time of the trial of the interventions. He pays no rent to Mrs. Teas. Mrs. Teas does not reside upon either tract.

(9) Mrs. Teas in response to a question as to who has charge of the land testified, "I guess I have, if that lease is any good". She also testified she told Mr. Harris, one of the church trustees, after the commissioner's sale and conveyance, that all her son "had was that little bit of property and I was going to stand by him as long as I live and could stand by him".

(10) Mr. Harris, a trustee of the church, testified that after he obtained the commissioner's deed for the church and later learned about the lease he talked to Mrs. Teas and she told him she was keeping the land for her son, Marvin.

(11) The intervenors purchased the property at public auction for substantial considerations, without actual or constructive notice of the lease, and paid the purchase monies in full.

Under the facts and circumstances in this case the decree cancelling the lease was warranted. It is clear the purchasers did not have actual knowledge of the lease and they were also not charged with constructive notice. Ark. Stat. Ann. § 49-201 sets out the requirements of an acknowledgment of an instrument for the conveyance of an interest in land and Ark. Stat. Ann. § 49-211 requires an acknowledgment before an instrument can be admitted to record. *Moore v. Ollson*, 105 Ark. 241, 150 S.W. 1028 (1912) held that a mortgage that was notarized and recorded but not acknowledged was not enforceable against a subsequent grantee of the property. The court quoted with approval a prior case, holding "an unrecorded mortgage, however honestly made, is wholly invalid against. . . . subsequent purchasers, who take with full knowledge that they are defeating another's lien and who intended to do so".

Ark. Stat. Ann. § 68-1301 provides that a conveyance in trust to the use of the person making the conveyance is void against existing creditors and subsequent purchasers. In the case of *Hardy* v. *Hardy*, 228 Ark. 991, 311 S.W. 2d 761 (1958), the husband executed transfers of stocks and mortgaged certain personal property to his mother after his wife had filed suit for divorce. The husband's mother was then made a party to the suit and cancellation of the transfers were sought. The court on appeal held the transfers to the mother were for the purpose of defeating the wife's property rights and quoted with approval from the case of *Oles Envelope Corporation* v. *Oles*, 193 Md. 79, 65 Atl. 2d 899, as follows:

A conveyance made by a husband before and in anticipation of his wife's suit for alimony, or pending such suit, or after a decree has been entered therein in the wife's favor, to prevent her from obtaining alimony, is fraudulent and may be set aside, unless the grantee took in good faith, without notice and for value. The grantee's knowledge of or participation in the fraud of the

grantor must be gathered from the various facts composing the transactions and all the surrounding circumstances. . . .

In *Renn* v. *Renn*, 207 Ark. 147, 179 S.W. 2d 657 (1944), the husband contemplating a divorce suit by his wife permitted his land to sell for taxes. His brother bought the land from the state and the husband continued in possession. On divorce being granted the court ordered the land sold by commissioner with one-third of the proceeds to be paid to the wife. The brother holding the deed from the state sought to enjoin the commissioner's sale. The wife countered the brother's claim contending the forfeiture of the land for taxes and the state deed to the brother was a subterfuge and fraud to defeat her of her dower, that the brother acted as an agent for the husband in getting the state deed, and that the husband was the real owner of the land and the brother a mere trustee. The court dismissed the complaint of the brother.

In upholding the chancellor the court said equity would pierce the sham of a fraudulent conveyance even though Mrs. Renn was a subsequent creditor rather than an existing creditor. The court said:

That this whole scheme was in the contemplation of Adolph Renn when he allowed the land to forfeit for taxes, may be reasonably inferred from the testimony of G. A. Renn that the husband and wife had been having marital difficulties for ten years and divorce suits had been filed and dismissed.

The Court also stated:

A conveyance made by the husband in anticipation of the wife's libel for divorce, and to prevent her from recovering alimony is fraudulent and may be set aside unless the purchaser took without notice and for value. . . . To invalidate a conveyance of the husband's property, the grantee ordinarily must have had actual or constructive notice that the conveyance was for the purpose of defeating the wife's claim to alimony.

In *Rush* v. *Smith*, 239 Ark. 706, 394 S.W. 2d 613 (1965)

involving a suit to set aside as a fraudulent transaction the transfer of assets to the husband's sister, the court said:

> We think it almost too plain for argument that the supposed sale was in fact a sham that did not divest Paul Rush either of his ownership of the stock or of his control of it. A husband's colorable disposition of assets to defeat his wife's property rights in a pending or anticipated divorce suit may be found to be fraudulent. . . . It cannot be doubted that Paul Rush's ostensible sale to his sister was intended to hinder Virginia Rush in the assertion of her property rights.

While the chancellor merely held the lease to be void in the present case because the wife did not join in the execution of the lease, there is ample evidence in the record warranting the chancellor in inferring from the evidence that the lessee, Mrs. Teas, who entered into the lease for a nominal consideration, had knowledge that her son's purpose in executing the lease to her was to prevent his wife from realizing her statutory interest out of the land upon divorce. This being true, we affirm the decree, although not on the ground articulated by the chancellor. In *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W. 2d 662 (1979), the Supreme Court stated the settled rule to be that on appeal a trial judge's decision will not be reversed if he reached the right result.

There is another reason for affirming the decree cancelling the lease to the 3 2/3rds acre tract of land. The undisputed evidence shows that it was the homestead of the parties. Mrs. George did not join in the execution of the lease. The land was not within an incorporated town or city and therefore the entire tract was the homestead regardless of value. The lease was void and subject to cancellation under the provision of Ark. Stat. Ann. § 50-415 which provides:

> No conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens, and the purchase money, unless his wife joins in the execution of such instrument and acknowledges the same.

The appellees as grantees under the commissioner's deeds acquired all of the rights and interests of Mr. and Mrs. George, and under the circumstances here have standing to seek cancellation of the lease.

Affirmed.