Dwayne SMITH and Rebecca Smith *v.*
Otis PARKER, Pauline Parker, and J-Dog, Inc.

CA 98-1316 998 S.W.2d 1

Court of Appeals of Arkansas
Division II
Opinion delivered September 1, 1999

*Bailey, Trimble, Lowe, Sellars & Thomas*, by: *Rick Sellars*, for appellants.

*Kelly & Huckabee*, by: *Jerry Kelly*, for appellees.

JUDITH ROGERS, Judge. This appeal concerns a farm lease entered into between appellee J-Dog, Inc., and Billy Jim Smith, the father of appellant Dwayne Smith. The issues on

appeal are whether the lease is enforceable against appellants, who were deeded part of the subject property after the execution of the lease, and whether the lease has priority over an easement owned by appellants. The chancellor ruled against appellants on both questions. We find no error and affirm.

Billy Jim Smith and Lillie Rose Smith were the owners of 160 acres of land in Lonoke County. Their home was located on a forty-acre tract on the north side of a county road. Mr. Smith farmed the land until approximately 1987. In that year, he entered into a crop-share lease with a Mr. Underwood. The lease was in force, on a year-to-year basis, through 1992. Beginning in 1993 and ending in 1995, Mr. Smith entered into a series of yearly leases with appellee J-Dog, Inc. Rent was payable on a crop-share basis, seventy-five percent to J-Dog and twenty-five percent to Mr. Smith. On February 28, 1996, Mr. Smith and J-Dog entered into the lease that is the subject of this case. The lease was for the same land and for the same crop-share percentages as the prior leases, but the term of the lease was seven years rather than one year. The lease was not signed by Mr. Smith's wife, Lillie Rose Smith. However, she became aware of the lease several days after it was executed.

On April 11, 1997, the Smiths deeded forty acres of the leased property to Circle S Farms, a partnership comprised of their four sons, including appellant Dwayne Smith. They also deeded a separate tract of land to Dwayne and his wife, Rebecca. That conveyance included a twenty-foot easement across the leased property. On April 14, 1997, Circle S sent a letter to Jacques Parker of J-Dog, Inc., informing him that the lease "has been assigned to Circle S Farms, a partnership, who is now the owner of the farm."

On June 28, 1997, Circle S Farms and Lillie Rose Smith attempted to terminate the lease that had been entered into between J-Dog and Billy Jim Smith. They sent separate letters to Jacques Parker asserting that they were not parties to the lease. The final paragraph of each letter read: "Your rights, if any, are hereby terminated as of December 31, 1997 and you are hereby

notified to quit and remove yourself from the property at that time."

On July 25, 1997, as part of a boundary-dispute action that is not relevant to this case, appellants and Circle S Farms filed a third-party complaint against J-Dog asking that the 1996 multi-year lease be declared null and void. They alleged that the lease was invalid because it was not signed by Lillie Rose Smith and that, because the lease was not recorded, it did not have priority over Dwayne and Rebecca Smith's easement.

After a hearing, the chancellor ruled that the doctrine of estoppel precluded appellants from arguing that the lease was void for want of Mrs. Smith's signature. He also found that, even though the lease was not recorded, Dwayne and Rebecca had actual knowledge of the lease at the time they acquired their easement. Therefore, J-Dog's rights under the lease were superior to their rights under the easement. It is from these findings that appellants bring their appeal.

■ ■ Chancery cases are reviewed *de novo* on appeal. *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). However, a chancellor's findings will not be reversed unless they are clearly erroneous. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

■ ■ We first address appellants' contention that the 1996 deed was void because it was not signed by Lillie Rose Smith. Ordinarily, an instrument affecting the homestead[1] of a married person is invalid unless the person's spouse joins in the instrument. Ark. Code Ann. § 18-12-403 (Supp. 1997). Therefore, when a husband leases homestead property without his wife's joining in the execution of the lease, the lease is void. *Mid-Continent Petroleum Corp. v. Smith*, 186 Ark. 838, 56 S.W.2d 420 (1933); *George v. George*, 267 Ark. 823, 591 S.W.2d 655 (Ark. App. 1979).

---

[1] There was no argument below, nor is there an argument on appeal, that the leased property did not contain the homestead of Mr. and Mrs. Smith.

However, despite the dictates of Ark. Code Ann. § 18-12-403, a spouse may be estopped to deny the validity of an instrument in which he or she did not join. *See Edwards v. Jones*, 197 Ark. 229, 123 S.W.2d 286 (1938). *See also First Fed. Sav. of Ark. v. Beard*, 108 B.R. 212 (Bankr. W.D. Ark. 1989).

■ We agree with the chancellor that the doctrine of estoppel precludes the application of section 18-12-403 in this case. The doctrine of estoppel is applicable when the following four elements are present: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel had a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Wells v. Everett*, 5 Ark. App. 303, 635 S.W.2d 294 (1982). At trial, Lillie Rose Smith testified that she had been aware since the days of the Underwood leases that her husband had leased their land for farming purposes. She knew about the one-year leases between her husband and J-Dog in 1993, 1994, and 1995, and accepted the monetary benefits of those leases. Regarding the 1996 lease, she was aware of its existence several days after it was executed. She expressed no objection to J-Dog that her name was not on the lease. She testified that she drove her husband to the USDA office "a lot" to transact business with regard to the lease. Additionally, she and her husband received the monetary benefits of the lease in 1996.

■ Under these circumstances, we cannot say that the chancellor's application of the estoppel doctrine was clearly erroneous. Mrs. Smith was aware of the lease's existence prior to her conveyance of the leased property to her sons. She had acquiesced for many years in her husband's unilateral lease of their property. She received the benefits of the leases, including the 1996 lease, without objection to the lessee. Further, there was evidence that J-Dog, in reliance on the long-term nature of the lease, expended funds on pipe and irrigation equipment. Based upon the forgoing, we affirm the chancellor's finding on this point.

■ ■ The next issue concerns the effect of the lease on appellants' easement across the leased property. At the time appel-

lants took title to their property in April 1997, the lease between Billy Jim Smith and J–Dog, Inc., had not been recorded. Generally, no instrument in writing which may affect title to real property shall be valid against a subsequent purchaser of the property unless the instrument is filed for record in the county where the real estate is situated. *See* Ark. Code Ann. § 14–15–404(b) (Repl. 1998). However, the instrument is valid if the subsequent purchaser had actual notice of it. *Killam v. Texas Oil & Gas Corp.*, 303 Ark. 547, 798 S.W.2d 419 (1990); *Wasp Oil, Inc. v. Arkansas Oil & Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983). Whether one buying land had notice of another's interest in the land is a question of fact. *McGill v. Grigsby*, 205 Ark. 349, 168 S.W.2d 809 (1943). We will not reverse a chancellor's finding of fact regarding whether a party is an innocent purchaser without notice unless that finding is clearly erroneous. *Malone v. Hines*, 36 Ark. App. 254, 822 S.W.2d 394 (1992).

 The chancellor's finding on this issue is not clearly erroneous. A subsequent purchaser will be deemed to have actual notice of a prior interest in the property if he is aware of such facts and circumstances as would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of these prior interests. *Killam v. Texas Oil & Gas Corp., supra.* In the case at bar, appellants were aware, prior to acquiring title, that J–Dog was farming the property in 1997 and that he had been farming it for many years prior to that. James Gary Smith, appellant Dwayne Smith's brother and the managing partner of Circle S, testified that he became aware of the 1996 lease several days after it was executed. Further, on April 14, 1997, the same day their deeds were recorded, the partners of Circle S, including Dwayne Smith, wrote to J–Dog to advise that the partnership had been assigned the lease. Finally, the partnership received monetary benefits from the lease in 1997. These facts show not only actual notice of the lease but ratification of it. *See generally Harrison v. United Farm Agency*, 222 Ark. 530, 262 S.W.2d 293 (1953).

Affirmed.

HART and GRIFFEN, JJ., agree.