Cite as 2019 Ark. App. 462

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-18-17

| | |
|---|---|
| VICKI KLINE<br><br>APPELLANT<br><br>V.<br><br>PHH MORTGAGE CORPORATION<br>APPELLEE | **Opinion Delivered**: October 16, 2019<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CV-15-1301]<br><br>HONORABLE JOHN R. SCOTT, JUDGE<br><br><br>AFFIRMED |

**MIKE MURPHY, Judge**

*And you may find yourself in a beautiful house*
*. . . .*
*And you may ask yourself, well*
*How did I get here?*[1]

Appellant Vicki Kline owns a house located on Champions Boulevard in Rogers, Arkansas, which is subject to a mortgage. Yet she claims that, unbeknownst to her, her signature was forged on numerous mortgage documents for the property.

In this litigation, Kline sought a declaration that the mortgage on the property held by appellee PHH Mortgage Corporation (PHH) is void. Kline pursued this relief on the basis of alleged forgeries of her signature on certain mortgage documents and pursuant to Arkansas Code Annotated section 18-12-403 (Repl. 2015) (sometimes referred to as Section 403).

---

[1]Talking Heads, "Once in a Lifetime," *Remain in Light* (Sire Records 1981).

Kline did not prevail before the circuit court. There, the court declined to grant her relief based on Section 403 and ordered a decree of foreclosure in favor of PHH. Kline appeals to our court. After due consideration, we affirm.

I. *Background*

In April 2000, Kline and her former husband, John Marquez, purchased property located on Champions Boulevard in Rogers, Arkansas, for $65,000. In 2001, they executed a $765,000 mortgage in favor of Arvest Bank to build a house on the property. In the years that followed, several additional loans would be taken out on the property in the names of both Kline and Marquez.

In 2002, a $345,000 second mortgage in favor of Arvest Bank was executed in the names of Kline and Marquez. In 2003, a mortgage in the amount of $1.2 million was executed in favor of Regions Bank with Kline's and Marquez's names appearing on the note. Shortly after the mortgage with Regions Bank was entered into, a release of the Arvest mortgages was recorded. In 2004, a $1.36 million mortgage in favor of Merrill Lynch was executed in the names of Kline and Marquez. A settlement statement reflects that the Merrill Lynch mortgage was used to pay off the Regions mortgage. The Merrill Lynch mortgage was recorded in November 2004. Thereafter, the Regions mortgage was released, which was recorded in December 2004. Subsequently, Merrill Lynch assigned its mortgage to PHH, a subsidiary and loan-servicing arm of Merrill Lynch.

In June 2010, Kline and Marquez filed for Chapter 7 bankruptcy. Their personal liability on the Merrill Lynch loan was discharged in the Chapter 7 bankruptcy, and the bankruptcy terminated in October 2010. Despite the discharge, Kline and Marquez

2

continued to voluntarily pay the Merrill Lynch loan to avoid foreclosure proceedings and remain on the property.

In June 2011, Kline and Marquez filed for Chapter 13 bankruptcy. In the Chapter 13 schedules, Kline acknowledged the existence of the Merrill Lynch loan. Additionally, Kline testified under oath about the Merrill Lynch loan at a Chapter 13 meeting of creditors in August 2011. She stated that she was personally familiar with the information contained in the bankruptcy documents; to the best of her knowledge, the information in those documents was true and correct; she read through and signed the documents; they were current on the Merrill Lynch loan, the loan payment was low because it was an interest-only loan, and they had contacted Merrill Lynch seeking a modification of the loan. The Chapter 13 bankruptcy was concluded in March 2015.

In November 2014, Kline filed for divorce from Marquez. Kline claims that in February 2015 during the pendency of the divorce, she first learned that her signature had been forged on numerous mortgage documents—including the Merrill Lynch loan. Despite her alleged discovery, the parties successfully mediated the division of their property in the divorce action, and their mediated agreement was incorporated into their divorce decree, which was entered in April 2015. With respect to the property on Champions Boulevard, the parties agreed that it would be the sole and separate property of Kline and that she would be solely responsible for any debt or liability associated with the property.

In September 2015, five months after her divorce was finalized, Kline filed this declaratory-judgment action, asserting that the PHH mortgage is void because her signature

3

was forged on the mortgage documents. She relies on Arkansas Code Annotated section 18-12-403 to support her argument. Section 403 provides,

> No conveyance, mortgage, or other instrument affecting the homestead of any married person shall be of any validity, except for taxes, laborers' and mechanics' liens, and purchase money, unless his or her spouse joins in the execution of the instrument, or conveys by separate document, and acknowledges it.

This statute is subject to certain judicially created exceptions, including estoppel. *See generally Edwards v. Jones*, 197 Ark. 229, 123 S.W.2d 286 (1939); *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999).

PHH filed an answer denying that Kline was entitled to the relief she requested. It raised the defenses of estoppel, waiver, laches, release, statute of limitations, and judicial estoppel. PHH also counterclaimed seeking to foreclose on the property.

Thereafter, PHH filed a motion for summary judgment. In the motion, PHH admitted that a factual question existed regarding whether Kline's signature had been forged on certain loan documents. PHH argued that irrespective of whether Kline's signature was forged, it should prevail as a matter of law on the basis of several equitable theories.

The circuit court held a hearing on PHH's motion for summary judgment. At the hearing, PHH disclosed that it was seeking partial summary judgment only on the theory of equitable subrogation. Ultimately, the circuit court granted partial summary judgment to PHH based on equitable subrogation.

A bench trial was held on the remaining claims in September 2017. In her case-in-chief, Kline put on evidence from herself and Brenda Petty, a handwriting expert. The testimony primarily pertained to whether Kline's signature had been forged on certain

4

mortgage documents. During Kline's case-in-chief, Kline specifically testified that in 2010 during her Chapter 7 bankruptcy, she knew she had a mortgage with Merrill Lynch. Kline also admitted that she swore in her bankruptcy schedules that she had this mortgage debt with Merrill Lynch. Despite these admissions, Kline stated that she did not know her signature had been forged while the bankruptcies were pending. She testified that she first learned of the forgeries in February 2015 during the pendency of her divorce and admitted that two months later in April 2015, she settled her divorce case and agreed that she would be solely responsible for any debt or liability associated with the property in exchange for sole ownership of it.

At the conclusion of Kline's case-in-chief, PHH moved for a directed verdict on her complaint. Because this was a bench trial, PHH had, in actuality, moved to dismiss.[2] *See* Ark. R. Civ. P. 50(a). The circuit court granted PHH's motion.

Thereafter, PHH put on evidence in support of its counterclaim for foreclosure. That evidence included the introduction of the Merrill Lynch promissory note, the assignment to PHH, and the pay-off calculation. The circuit court ruled in favor of PHH on its counterclaim and granted a decree of foreclosure to PHH.

An order and decree of foreclosure was filed in November 2017. In the order, the circuit court dismissed Kline's declaratory-judgment complaint and granted PHH's request for foreclosure. As part of the order, the circuit court made certain findings, which included that

---

[2]In the interest of clarity, we will refer to PHH's motion for directed verdict as a motion to dismiss.

> Kline argued from the outset of this case that the mortgage in question was not valid pursuant to Ark. Code Ann. § 18-12-103 [sic].[3] PHH argued that Kline acknowledged the mortgage on numerous occasions and was estopped from relying upon its protection. The Court finds that the statute is not applicable.

Kline timely appealed. On appeal, Kline argues that the circuit court erred by (1) ruling that Section 403 was inapplicable and that Kline had acknowledged PHH's mortgage; (2) applying the theory of estoppel to prevent her from denying the mortgages; (3) applying the theory of judicial estoppel to prevent her from denying the mortgages; (4) applying equitable subrogation to make her responsible for the mortgage debt; (5) granting summary judgment to PHH on the issue of equitable subrogation; and (6) granting PHH's request for a foreclosure decree and denying her request for declaratory judgment that the mortgage was void.

## III. *Acknowledgement*

Kline's first argument on appeal stems from what she perceives as the circuit court's legal error regarding whether Section 403 applied to the facts of her case. The circuit court ruled as follows:

> Kline argued from the outset of this case that the mortgage in question was not valid pursuant to Ark. Code Ann. § 18-12-103 [sic]. PHH argued that Kline acknowledged the mortgage on numerous occasions and was estopped from relying upon its protection. The Court finds that the statute is not applicable.

Kline interprets the order to mean that Section 403 did not operate to void PHH's encumbrance. She contends that this ruling must be reversed. In support, Kline relies on

---

[3]The circuit court's order and decree of foreclosure refers to Ark. Code Ann. § 18-12-103 rather than § 18-12-403. There is no dispute that this is merely a clerical error and that the circuit court intended to refer to § 18-12-403.

6

the circuit court's use of the word "acknowledged" in the order. She argues that there is no evidence to support a finding of acknowledgement pursuant to Section 403.

We recognize that the use of the word acknowledged in the circuit court's order could arguably present some uncertainty. An acknowledgement pursuant to Section 403 is not an informal undertaking. It is "a formal declaration or admission before an authorized public office by a person who has executed an instrument that such instrument is his act and deed." *Lyle Farms P'ship v. Lyle*, 2016 Ark. App. 577, 507 S.W.3d 519. Under the facts before us, there is no evidence to support a finding that Kline acknowledged the mortgage within the meaning of Section 403.

Nevertheless, Kline has not demonstrated reversible error. The circuit court did not make a finding of compliance with Section 403. Instead, it found that the protections of Section 403 were not available to Kline because she was aware of PHH's lien on the property and that her actions estopped her from relying on it. In the order, the sentence containing the word acknowledged indicates an informality and also continues to provide that Kline was estopped from relying on Section 403's protections. Moreover, PHH utilized equitable arguments to defend against Kline's declaratory–judgment action and did not put on evidence that there had been strict compliance with Section 403.

We affirm on this point, holding that the circuit court did not err in finding that Section 403 did not operate to void PHH's mortgage.

IV. *Estoppel*

Next, Kline argues that the circuit court erred by making a finding of estoppel and dismissing her complaint on that ground. In support of reversal, Kline makes two arguments.

7

First, she argues that estoppel is not a valid exception to the requirements of Section 403. Alternatively, she asserts that the facts before the circuit court did not support an estoppel finding.

We begin by considering whether the circuit court erred by finding that estoppel is a valid exception to Section 403. This issue is easily resolved in PHH's favor. Kline explains that the statute has certain exceptions built into it, those exceptions are specifically identified in the statute, and they do not include estoppel. Her argument ignores our longstanding caselaw, which includes a judicially created exception for estoppel. *See generally Edwards v. Jones*, 197 Ark. 229, 123 S.W.2d 286 (1939); *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999). Furthermore, as a practical matter, our court does not overrule cases handed down by our supreme court. *Sweeden v. Farmers Ins. Grp.*, 71 Ark. App. 381, 30 S.W.3d 783 (2000). Accordingly, we refuse to reverse on this basis.

With this conclusion reached, we direct our attention to whether the facts before the circuit court supported a finding of estoppel. Because the circuit court dismissed Kline's complaint pursuant to PHH's motion to dismiss, we analyze whether dismissal should have been granted by reviewing the evidence in the light most favorable to the party against whom the dismissal was sought, giving it its highest probative value and taking into account all reasonable inferences deducible from it. *Follett v. Fitzsimmons*, 103 Ark. App. 82, 286 S.W.3d 742 (2008).

Our supreme court has defined equitable estoppel as "a judicial remedy by which a party may be precluded by its own act or omission from asserting a right to which it otherwise would have been entitled, or pleading or proving an otherwise important fact." *Chitwood v.*

8

*Chitwood*, 92 Ark. App. 129, 141, 211 S.W.3d 547, 554 (2005). Because PHH sought to rely on the affirmative defense of estoppel, it had the burden of proving that (1) Kline knew the facts; (2) Kline intended that her conduct be acted on; (3) PHH was ignorant of the facts; and (4) PHH relied on Kline's conduct and was injured by that reliance. Ark. R. Civ. P. 8(c); *Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112, 488 S.W.3d 513.

Here, the circuit court did not err by finding that Kline was estopped from relying on the protections of Section 403. We emphasize that Kline admitted she knew she had a mortgage with Merrill Lynch in 2010, which was during her Chapter 7 bankruptcy proceedings. Moreover, during her Chapter 13 bankruptcy, Kline signed documents under a penalty of perjury that Merrill Lynch had a first mortgage on the property and testified under oath at the Chapter 13 meeting of creditors that she knew about the mortgage and its features and that she had even sought a modification of the loan. Kline's testimony clearly demonstrates that she was aware of the Merrill Lynch loan and that it obligated her. Despite these admissions, Kline attested that she did not know her signature had been forged on the Merrill Lynch loan during her bankruptcies. She explained that she did not learn of the forgeries until February 2015 during the pendency of her divorce from Marquez. Nevertheless, she agreed to take ownership of the property and any debt or liability associated with it in her divorce decree, which was entered in April 2015 after she admittedly had learned about the alleged forgeries.

The facts in this case are precisely those that the defense of estoppel was designed to cover. Kline knew that there was a loan in favor of Merrill Lynch that obligated her to pay a debt. She behaved as though she agreed and understood that she was obligated to pay the

debt for several years—through two bankruptcies and a divorce. Even after she claims she learned about the alleged forgeries in 2015, she agreed to take responsibility for any debt or liability on the property in exchange for sole ownership of it. Then, she filed this action seeking to void the mortgage on the property. We affirm the circuit court's order finding she was estopped from doing so. Kline's owns acts preclude her from asserting a right to which she may have otherwise been entitled. *See Chitwood*, *supra.*

Having reached this conclusion, we need not consider Kline's arguments regarding whether the circuit court erred in granting relief to PHH based on the defenses of judicial estoppel and equitable subrogation.

V. *Foreclosure*

Finally, we consider Kline's last point on appeal—whether the circuit court erred in granting PHH's request for foreclosure. Because the circuit court granted foreclosure at the conclusion of the bench trial, our standard of review is whether the court's finding was clearly erroneous or clearly against the preponderance of the evidence. *Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007).

Here, Kline's argument hinges on the premise that the requirements of Section 403 had to be met in order for PHH to prevail on its counterclaim for foreclosure. We have already determined that the circuit court did not err by finding that Kline was estopped from relying on the protections of Section 403. Accordingly, our analysis is straightforward. PHH introduced sufficient evidence to support its complaint in foreclosure, and we affirm on this point.

10

## VI. *Conclusion*

We affirm the circuit court's order and decree of foreclosure and hold that the circuit court did not err in finding Kline was estopped from relying on the protections of Section 403 and that PHH was entitled to foreclose on the property.

Affirmed.

GRUBER, C.J., and HARRISON, J., agree.

*Sanford Law Firm, PLLC*, by: *Josh Sanford*, for appellant.

*Wilson & Associates, P.L.L.C.*, by: *H. Keith Morrison*, for appellee.