Cite as 2024 Ark. App. 218

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-259

ALEXANDRIA MERRIFIELD

APPELLANT

V.

JAMES PENNER

APPELLEE

Opinion Delivered March 27, 2024

APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT
[NO. 72DR-17-1601]

HONORABLE STACEY ZIMMERMAN, JUDGE

REVERSED AND REMANDED

## MIKE MURPHY, Judge

This is a one-brief appeal. Appellant Alexandria Merrifield appeals the January 13, 2023 ruling of the Washington County Circuit Court order declining to modify the custody arrangement she has with appellee James Penner regarding their son, MC, who was eight years old when the order at issue was entered. On appeal, she argues that the circuit court erred when it did not find that a material change in circumstances existed to warrant modifying custody. She further argues that the circuit court did not make a ruling that comported with a preponderance of the evidence. We agree that the circuit court erred in failing to find a material change had occurred since the entry of the last order, and we reverse and remand.

The order in effect immediately prior to the current litigation was from 2019 and established that Penner had full custody of MC, and Merrifield was afforded reasonable visitation at Penner's discretion. The order was entered on default; Merrifield was incarcerated at the time. On June 23, 2022, Merrifield petitioned for modification of custody, alleging that Penner was physically violent. Merrifield also sought temporary and emergency custody.

A temporary hearing was held on August 22 and awarded Merrifield visitation. Merrifield then moved for emergency ex parte custody on October 31. In that motion, she alleged that MC is left home alone after school, has disclosed being subject to indecent exposure by an unknown person, and had scratches and bruises on him. The court entered the ex parte order granting Merrifield custody and set the matter for an emergency hearing. At that hearing it was established that Penner used corporal punishment until recently and had also slapped MC on the face before May 2022 (MC would have been six and a half in May 2022). A temporary order entered after the hearing returned custody to Penner but provided that neither party should physically punish MC.

A final hearing on the matter was held on December 16. At that hearing, the court heard the following testimony. First to testify was Cameron Magness, who testified that she was the school counselor at MC's school and that she called the child-abuse hotline in 2021 when she saw bruising on MC, and MC said that his father hit him. She testified that, since 2021, she has observed MC, and he is tidy and polite. When asked if she had any concerns about MC, she responded, "Not at this time."

Kathleen Housley, Merrifield's drug and addiction counselor, testified that Merrifield has made progress and is very committed to her sobriety. Nancy Raines, Merrifield's former probation officer, testified that Merrifield was paroled from the Arkansas Division of Correction in 2019 and would remain on probation until 2023 but that Merrifield had made consistent progress on probation and successfully completed the drug-court program in February 2022.

The court then took judicial notice of MC's dependency-neglect case with the Arkansas Department of Human Services (DHS) during which MC was in the foster-care system before his father was awarded custody of him. No parties objected to the entry of those orders into the record.

Merrifield's significant other, Jeremy Bradsher, testified that he and Merrifield live in a four-bedroom duplex. He testified that, one day during visitation, he noticed significant bruising all over MC, and he took a photo of the bruising that was admitted into evidence. Rebecca Burch, Merrifield's mother, testified that she took a video of bruising on MC that was admitted into evidence.

Merrifield testified that she has a job and began paying child support in 2022. She's paid roughly $22,000 in fines over the last few years. She is taking college courses. She stated that MC comes home from his father's house dirty, and MC does not have proper medical management. She said that MC's backpack smells like marijuana, and his clothes are too small. She testified that Penner had assaulted her in 2020.

Penner testified that he has been arrested and pleaded guilty twice to domestic battery. He testified that he has administered corporal punishment but has not done so since ordered by the court not to. He said he was not responsible for the bruising on MC and that he has stopped smoking marijuana. He said he was willing to facilitate visitation with Merrifield. He said MC gets bruises from playing hard. He said that he slapped MC in the face "just the once."

The ad litem recommended that Merrifield have custody.

Following testimony, the court found that Penner was arrested for domestic assault in 2020; that Merrifield was in jail as recently as 2021 but had been "pretty stable since the summer of 2021"; and that Merrifield is "still on probation for something until April of 2023." The court reviewed the photos and video admitted. The court found that

> [t]here's bruising on [MC]'s legs. What gives me the most pause is the bruising around [MC]'s neck. It's a linear, large bruise around the right side of [MC]'s neck. And that photo was taken in October of 2022, a little before, I think, Halloween. I think that's about the time, maybe, of the video that shows clearly bruising on [MC]'s back. Dad says he doesn't know where [MC] got the bruising on his back, but he admits that he slapped [MC] in the face. The counselor said that [MC] said his dad hit him. And his dad apologized. The video that was admitted into evidence shows two big bruises on the left side of [MC]'s back and one big bruise on the right side of his back about the size of a small lemon, each one of those bruises. And they're yellowish-blue bruises on his back. I had a hard time seeing the knot or the bruise on his head, but he also had a right arm, he had, like, a scab-type, size-of-a-dime thing around his right elbow on the video and a bigger size bruise on the back of his arm. Ms. Burch, his Grandmom Becky, said the next visit, he still had the bruising, but it was a fading yellow.

The court found that, at the previous hearing, Penner admitted he had spanked MC and testified that MC "could've jumped," causing Penner to hit MC on the back. The court

4

did not express concern with the lack of visitation Penner had allowed Merrifield considering Merrifield's "track record" with being "in and out of jail."

The court weighed all this evidence against the parties' history. The court found that Penner had been the only stable person for MC since 2017 when MC was placed in foster care. It noted that in the first year and a half following the 2019 order, Merrifield was not stable. The court remarked, "Dad is certainly not perfect. He's spanking the kid. That's not good. Slapped the kid once in the face. That's not good."

In the written order that followed, the court found that "no material change in circumstances exists that warrants modification of child custody[.]"

Merrifield appealed. She makes two arguments on appeal, but because we agree with her that the court erred in failing to find a material change in circumstances, we need not address both points.

This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999). We recognize, and give special deference to, the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham v. Cunningham*, 2019 Ark. App. 416, at 4, 588 S.W.3d 38, 40.

Modification of custody is a two-step process: first, the circuit court must determine whether a material change in circumstances has occurred since the last custody order; and second, if the court finds that there has been a material change in circumstances, the court must determine whether a change of custody is in the child's best interest. *Shell v. Twitty*, 2020 Ark. App. 459, at 4, 608 S.W.3d 926, 929–30. We look at whether there has been a material change in circumstances since issuance of the last order of custody—here, the 2019 default order awarding Penner full custody.

We agree with Merrifield that a material change has occurred. Since the entry of the 2019 order, Penner was arrested for domestic battery; was under investigation by DHS for child abuse; and had, in fact, slapped MC in the face when MC would have been six years old or younger.[1] In *Montez v. Montez*, 2017 Ark. App. 220, at 10–11, 518 S.W.3d 751, 757, we held that the circuit court erred in failing to find a material change in circumstances when the evidence showed, among other things, that one of the parties and her new partner had a volatile domestic relationship that adversely affected the children. And in *Skinner v. Shaw*, 2020 Ark. App. 407, at 11, 609 S.W.3d 454, 460, we held that a material change had occurred when the mother failed to protect her children from abuse by someone else. The evidence in this record goes beyond even *Montez* and *Shaw*: there is significant evidence of domestic violence at Penner's hand. The circuit court found as much. It was clearly

---

[1]"Abuse," as it is defined in the juvenile code, includes striking a child six years of age or younger on the face or head. Ark. Code Ann. § 9-27-303 (Supp. 2023).

erroneous, then, for the circuit court to subsequently not find that a material change had occurred. We are left with a definite and firm conviction that a mistake has been made.

Reversed and remanded.

HARRISON, C.J., and WOOD, J., agree.

*Elizabeth Finocchi*, for appellant.

One brief only.