Cite as 2024 Ark. App. 551

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-23-530

| | |
|---|---|
| ROSS WARREN FERGUSON<br><br>APPELLANT<br><br>V.<br><br>MARIA FERGUSON<br><br>APPELLEE | Opinion Delivered November 6, 2024<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR-22-406]<br><br>HONORABLE JOHN C. THREET, JUDGE<br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Ross Ferguson has filed this pro se appeal from the Washington County Circuit Court's divorce decree awarding his ex-wife, Maria Ferguson, legal and physical custody of the parties' three-year-old and seven-year-old sons and awarding Ross supervised visitation. Ross argues that the circuit court erred in not awarding joint custody. We affirm.

The parties were married on January 23, 2013, and separated on February 24, 2022. Maria filed a complaint for divorce on March 21, 2022.

Maria testified at the divorce hearing that she filed for divorce after having significant concerns about her own and the children's safety based on Ross's recent behavior. She said that Ross consumes marijuana "constantly all day long"; "gets so high that he loses conscious of things that he does"; was always upset, irritable, and angry; and began having delusions in 2021. She explained that he started saying he was God, feeling paranoid that people were spying on him and sending him messages through TV and movies, and becoming violent

and screaming around the children. She said most of the strange behavior began in February 2021 after he went on a weekend trip to Hare Mountain with his brother-in-law where they consumed LSD and smoked marijuana. Ross returned from the weekend barefoot, upset, pale, and with increasing delusions. Maria testified that Ross started a new "religious revolution" and thought that he had followers. She testified that she was scared of Ross and afraid that he might hurt her or the children or try to take the children somewhere. She said that she was afraid for Ross to be alone with the children because he might "become psychotic with [them]" and because he leaves marijuana within their reach.

She described an incident in January 2022 in which Ross became upset and grabbed a "golf bat" or "baseball bat" and threatened her in front of the children. She said she put the children in her bedroom, and Ross opened the bedroom door and attempted to take one of the children. When Maria tried to prevent this by grabbing the child, Ross grabbed her and put his knee on her chest, preventing her from breathing. She said one of the children told her that he "hit his dad with the pole." Ross eventually let her go and left the bedroom. She and the children escaped through a window, took Ross's car, and went to the police station. Afterwards, she and the boys stayed in an Airbnb for several weeks. She said Ross threatened to take the children to New Mexico.

Maria testified that in February 2022, Ross told her he was going to burn down their house and the church, and then he burned all their books in the back yard and broke all their computers and flashlights. In March 2022, Ross's mother, Kathy Ferguson, filed a petition for guardianship over Ross, alleging that he has a "serious mental illness" and is a

2

danger to himself and others. She alleged that he had extreme psychosis, possible schizophrenia and bipolar 1, and that he is delusional and sees, hears, and smells things that are not real. She said he had been evaluated at UAMS and diagnosed as a danger to himself and others. Kathy filed a motion to dismiss the petition two weeks later.

Maria testified that in August 2022, Ross showed up at the house "dirty," "smelly," "pale," and "sweaty" and took off all his clothes except for his boots. He told Maria that he knew she heard voices "too," and he was very upset. He screamed to the neighborhood, "I'm going to kill you all. Stay away from my family." She said that a neighbor called the police.

Maria also said that their oldest child attends counseling due to stress and trauma. She said that he has had a difficult time understanding why he sees "his dad running naked in our front yard." Although a report from a psychological evaluation conducted on Ross at the request of his own attorney included diagnoses for bipolar disorder and narcissistic personality disorder, Maria said that Ross does not believe he has these disorders and therefore does not take the prescribed medication.

Ross testified that he was living with his mother at the time of the hearing. He admitted that he had been diagnosed with bipolar disorder and narcissistic personality disorder but said he was not taking any medication for bipolar disorder. He said that that he was taking Adderall. He also admitted that he had used LSD on his weekend trip to Hare Mountain. Ross asked the court to award joint custody.

From the bench, the court agreed to Maria's proposed custody arrangement, which awarded primary custody to her and supervised visitation to Ross with the potential for a

gradual transition to unsupervised visitation over a six-to-nine-month period and possible joint custody after mediation. The court said it was not comfortable awarding joint custody at the time of the hearing given the testimony set forth above and noted that "the demeanor of [Ross] at times on the stand concerned the Court as irrational and delusional."

The court entered a decree of divorce on April 18, 2023, finding by clear and convincing evidence that it is in the best interest of the children for Maria to have primary custody. The court specifically found it was not in the children's best interest to award joint custody due to Ross's delusions, physical violence, threats to the home and church, running naked in the street, drug use, emotional and verbal abuse, and suicidal statements. The court awarded supervised visitation to Ross with his mother, Kathy, as the supervisor on a schedule that allowed Ross to transition gradually to unsupervised visitation over a six-month period, assuming the visits go well. The transition included the requirements that Ross provide proof he has enrolled with a psychologist and a psychiatrist, that he take any medication prescribed by them, that he attend counseling as recommended, and that he obtain and maintain stable, independent housing. If Ross transitions to unsupervised visitation according to the schedule and requirements, "and they go well for a period of 2 months, Ross shall have the Washington County [Circuit] Court's Suggested Visitation Schedule attached hereto."[1]

---

[1]The Washington County Circuit Court's Suggested Visitation Schedule is not included in the record.

Ross appealed the decree, contending that the circuit court "erred in granting the appellee full custody" and asking this court to enter a "new visitation schedule" pursuant to which the parties share joint custody that Ross contends is more "closely aligned" with Arkansas Code Annotated section 9-13-101 (Supp. 2023). He has detailed specifically how the parties would share this equal time. Ross specifically limits his "Request for relief" to the joint-custody arrangement he has proposed. We will consider what Ross has argued: the circuit court erred in not awarding joint custody.[2]

Pursuant to Arkansas Code Annotated section 9-13-101(a)(1)(A)(iv) (Supp. 2023), there is a presumption that an award of joint custody is in the best interest of the child,

---

[2]We note that Ross's brief also includes a page listing the following "Points on Appeal":

1. The unequal visitation schedule proposed by the lower courts is detrimental to the Ferguson children.
2. Appellee's testimony outweighed the Appellant's (Defendant) in the lower courts.
3. Evidence provided by the Appellee was unclear.
4. Testimony and Behavior of Appellee places an undue burden on the Appellant.
5. Appellee's Post Trial Brief is factually wrong, and the incorrect use of precedent established in Coker v. Coker can lead to a lower court's misunderstanding of evidence.
6. The lower court labeled the Appellant a risk without providing common means of relief.
7. The Request for Relief is necessary for the children.

None of these points are set forth or developed in the argument section of his brief, and we do not consider arguments not supported by convincing argument or citation to authority. *Cullen v. Allstate Ins. Co.*, 2021 Ark. App. 445, at 5. Nor will we make an appellant's argument for him or consider an argument that is not properly developed. *Sanders v. JLP, LLC*, 2024 Ark. App. 65, at 6, 683 S.W.3d 607, 611.

which may be rebutted if the circuit court finds by clear and convincing evidence that joint custody is not in the best interest of the child, as the court did here. The primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *House v. House*, 2023 Ark. App. 477, at 6, 678 S.W.3d 824, 829.

This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Pace v. Pace*, 2020 Ark. 108, at 9, 595 S.W.3d 347, 352. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 224, 998 S.W.2d 1, 3 (1999). We recognize and give special deference to the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Cunningham v. Cunningham*, 2019 Ark. App. 416, at 4, 588 S.W.3d 38, 40. The crux of these cases is that a child-custody determination is fact specific, and each case ultimately must rest on its own facts. *Wallis v. Holsing*, 2023 Ark. App. 137, at 5, 661 S.W.3d 284, 287.

Ross's arguments are simply a request that we reweigh the evidence, reevaluate the witnesses' credibility, and evaluate both differently than did the circuit court. However, we do not reweigh evidence in these cases; rather, we give special deference to the superior position of the circuit court in weighing the evidence. *House*, 2023 Ark. App. 477, at 7, 678 S.W.3d at 829. The record in this case is clear that the circuit court carefully considered all the evidence in its detailed and thorough findings. And although the record supports the

court's conclusion that Ross appeared at times to be irrational and delusional and not an appropriate caregiver for the children, the court authorized a transition to unsupervised regular visitation based on Ross's continued attention and improvement to his mental health. The court made findings based on the best interest of the children. On de novo review of this record, we are not left with a definite and firm conviction that the circuit court made a mistake.

Affirmed.

KLAPPENBACH and THYER, JJ., agree.

*Ross W. Ferguson*, pro se appellant.

One brief only.